## EXECUTION SCHEDULED FOR JANUARY 14, 2021

No. 20-15

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

## UNITED STATES OF AMERICA,

## Plaintiff – Appellee,

v.

## COREY JOHNSON, A/K/A O, A/K/A CO,

## Defendant – Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Virginia

_____

## CAPITAL CASE

## OPENING BRIEF OF APPELLANT COREY JOHNSON

## ORAL ARGUMENT REQUESTED

_____

Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ........................................................................................... 1

STATEMENT OF JURISDICTION ..................................................................... 4

STATEMENT OF THE ISSUES .......................................................................... 4

STATEMENT OF THE CASE ............................................................................. 5

I.      THE PROCEDURAL HISTORY OF MR. JOHNSON'S
        CONVICTIONS AND SENTENCE ........................................................... 5

II.     THE BACKGROUND AND OPERATION OF THE FIRST STEP
        ACT .......................................................................................................... 8

III.    THE RELEVANT STATUTE OF CONVICTION ...................................... 11

IV.     MR. JOHNSON'S CLAIM FOR FIRST STEP ACT RELIEF IN
        DISTRICT COURT ................................................................................. 13

V.      THE DISTRICT COURT'S ORDER DENYING RELIEF .......................... 15

STANDARD OF REVIEW ............................................................................... 17

SUMMARY OF ARGUMENT .......................................................................... 17

ARGUMENT ................................................................................................. 19

I.      MR. JOHNSON IS ELIGIBLE FOR RELIEF UNDER SECTION 404
        OF THE FIRST STEP ACT BECAUSE HIS STATUTE OF
        CONVICTION IS § 848 AND THE PENALTIES OF § 848 WERE
        MODIFIED BY THE FAIR SENTENCING ACT ....................................... 19

        A.      Section 848 in Its Entirety Is a Covered Offense .............................. 20

        B.      Even if Subsection 848(e) Is a Stand-alone Statute, It Is a
                Covered Offense Because Its Penalties Were Modified by the
                Fair Sentencing Act ....................................................................... 29

C.    The District Court's Attempt to Parse § 848(e) into Fragments to Exclude Mr. Johnson from First Step Act Relief Suffers Additional Fatal Flaws ........................................................32

II.   IF THIS COURT DETERMINES THAT MR. JOHNSON COMMITTED COVERED CAPITAL OFFENSES, MR. JOHNSON IS ENTITLED TO HAVE HIS SENTENCE RECONSIDERED BY A JURY ........................................................................................36

III.  THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT INDICATED IT WOULD REFUSE TO REDUCE MR. JOHNSON'S SENTENCE IF IT FOUND THAT HE HAD COMMITTED COVERED CAPITAL OFFENSES ............................................42

CONCLUSION ........................................................................45

STATUTORY ADDENDUM ..........................................................ADD-i

ii

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Andrews v. United States*,
373 U.S. 334 (1963)................................................................39

*Blockburger v. United States*,
284 U.S. 299 (1932)................................................................33

*Dorsey v. United States*,
567 U.S. 260 (2012).................................................................8

*Hurst v. Florida*,
136 S. Ct. 616 (2016)........................................................38, 41

*Johnson v. United States*,
135 S. Ct. 2551 (2015)..............................................................7

*Kimbrough v. United States*,
552 U.S. 85 (2007)...................................................................8

*Lockett v. Ohio*,
438 U.S. 586 (1978)........................................................38, 41

*Marx v. General Revenue Corp.*,
568 U.S. 371 (2013)...............................................................34

*Merit Management Group, LP, v. FTI Consulting, Inc.*,
138 S. Ct. 883 (2018)..............................................................25

*Ring v. Arizona*,
536 U.S. 584 (2002)...............................................2, 15, 19, 41

*Skipper v. South Carolina*,
476 U.S. 1 (1986)...................................................................38

*Teleguz v. Pearson*,
689 F.3d 322 (4th Cir. 2012) ...................................................44

iii

*United States v. Aramony*,
    166 F.3d 655 (4th Cir. 1999) ...................................................................18, 33

*United States v. Boulding*,
    960 F.3d 774 (6th Cir. 2020) .........................................................................22

*United States v. Brown*,
    No. 08-CR-00011-1, 2020 WL 3106320
    (W.D. Va. June 11, 2020).........................................................................passim

*United States v. Chambers*,
    956 F.3d 667 (4th Cir. 2020) ...................................................................passim

*United States v. Davis*,
    139 S. Ct. 2319 (2019)....................................................................................7

*United States v. Davis*,
    No. 93-CR-30025, 2020 WL 1131147 (W.D. Va. Mar. 9, 2020) .....18, 22, 35

*United States v. Dean*,
    No 97-276(3), 2020 WL 2526476 (D. Minn. May 18, 2020) .................24, 27

*United States v. Dillard*,
    891 F.3d 151 (4th Cir. 2018) .........................................................................44

*United States v. Gravatt*,
    953 F.3d 258 (4th Cir. 2020) ...................................................................passim

*United States v. Jackson*,
    952 F.3d 492 (4th Cir. 2020) .........................................................................44

*United States v. Jackson*,
    964 F.3d 197 (3d Cir. 2020) ..........................................................................22

*United States v. Jimenez*,
    No. 92-CR-550-01, 2020 WL 2087748 (S.D.N.Y. Apr. 30, 2020)...............27

*United States v. Martin*,
    No. 19-3905, 2020 WL 3251021 (6th Cir. June 16, 2020) .....................42, 43

*United States v. NJB*,
    104 F.3d 630 (4th Cir. 1997) ....................................................................28, 29

iv

*United States v. Ocasio*,
  750 F.3d 399 (4th Cir. 2014) ........................................................................17

*United States v. Shaw*,
  957 F.3d 734 (7th Cir. 2020) ........................................................................22

*United States v. Smith*,
  954 F.3d 446 (1st Cir. 2020)..........................................................21, 22, 34

*United States v. Snow*,
  967 F.3d 563 (6th Cir. 2020) ........................................................................31

*United States v. Stitt*,
  459 F.3d 483 (4th Cir. 2006) ..................................................................39, 40

*United States v. Stitt*,
  552 F.3d 345 (4th Cir. 2008) ..................................................19, 39, 40, 41

*United States v. Stokes*,
  347 F.3d 103 (4th Cir. 2003) ........................................................................17

*United States v. Wirsing*,
  943 F.3d 175 (4th Cir. 2019) .................................................................passim

*United States v. Woodson*,
  962 F.3d 812 (4th Cir. 2020) ................................................................passim

*Woodson v. North Carolina*,
  428 U.S. 280 (1976).......................................................................................41

*Wright v. United States*,
  425 F. Supp. 3d 588 (E.D. Va. 2019) ..............................................27, 35, 42

## STATUTES

18 U.S.C. § 3553 ...............................................................................passim

18 U.S.C. § 3596...................................................................................7

18 U.S.C. § 3231 ...................................................................................4

18 U.S.C. § 3591 .................................................................................36

18 U.S.C. § 3592 ..................................................................2, 35, 36, 38

v

18 U.S.C. § 3593 ........................................................................passim

18 U.S.C. § 3742 .................................................................................4

21 U.S.C. § 841 ...........................................................................passim

21 U.S.C. § 846 ...........................................................................passim

28 U.S.C. § 2255 ...........................................................2, 7, 39, 40

28 U.S.C. § 1291 ................................................................................4

Anti-Drug Abuse Act, 21 U.S.C. § 848 ......................................passim

Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 ................passim

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ..........................passim

## RULES

Fed. R. App. P. 4 ...............................................................................4

## OTHER AUTHORITIES

Decision and Order, *United States v. Robinson*,
No. 98-CR-60 (E.D. Wis. Sept. 27, 2019), ECF No. 606 ............................27

Memorandum Decision and Order, *United States v. Hines*,
No. 94-CR-150 (N.D.N.Y. Nov. 8, 2019), ECF No. 607 ..............................27

Memorandum Decision and Order, *United States v. Walker*,
No. 95-CR-101 (N.D.N.Y. Oct. 25, 2019), ECF No. 620 ............................27

Order, *United States v. Groves*,
No. 94-CR-97 (E.D.N.C. Nov. 21, 2019) ..................................................27

Order, *United States v. Kelly*,
No. 94-CR-163-4 (E.D. Va. June 5, 2020) ................................................27

United States' Motion to Remand, *United States v. Maupin*,
No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26 ...................................21

## **INTRODUCTION**

Mr. Johnson's appeal is the first to ask a court of appeals to determine whether the First Step Act applies to convictions that resulted in a sentence of death under the Anti-Drug Abuse Act, 21 U.S.C. § 848 (the "ADAA"). Mr. Johnson is eligible for reconsideration of his capital sentences under Section 404 of the First Step Act because his Continuing Criminal Enterprise ("CCE") convictions are covered offenses, and he merits relief. The district court erred in finding otherwise.

The CCE statute does not apply exclusively to Mr. Johnson or to capitally sentenced defendants. Since the enactment of the First Step Act in 2018, district courts throughout this Circuit have been grappling with the issue of whether CCE convictions are covered offenses in cases brought by non-capitally sentenced defendants as well and have split on whether defendants with CCE convictions are eligible for relief. Despite that absence of resolution on this question, the government set an execution date for Mr. Johnson of January 14, 2021, after Mr. Johnson filed a notice of appeal in this case.

Mr. Johnson is eligible for relief under the First Step Act. By providing relief from sentences for covered offenses based broadly on the statute of conviction, the First Step Act was designed to be categorical and inclusive. Here, the relevant statute of conviction is § 848, which prohibits CCEs. A CCE, in turn,

1

is based on the commission of specified drug offenses.  There is no dispute that crack cocaine drug offenses are "covered offenses" for purposes of the First Step Act because those offenses contain penalties that were modified by the Fair Sentencing Act.  And because § 848 necessarily relies on drug violations whose penalties were modified by the Fair Sentencing Act, that statute too contains penalties that were modified by the Fair Sentencing Act.  As such, § 848 is a covered offense.

The fact that he was sentenced to death by a jury does not limit his eligibility.  To the contrary, he is entitled to have a jury reconsider his death sentences because the federal capital sentencing statute requires it, 18 U.S.C. § 3593, and the imposition of a death sentence involves findings of fact, *Ring v. Arizona*, 536 U.S. 584, 609 (2002), including the factors required by 18 U.S.C. §§ 3553, 3592, and 3593, and embodied in capital jurisprudence.  These include the nature and circumstances of the defendant's crimes, including any legal developments since the time of trial that have altered the picture of his convictions, as well as any evidence in mitigation, including Mr. Johnson's background, life history and characteristics, including all that has been learned about him in the years since he was originally sentenced.[1]

---

[1]   This is particularly true in Mr. Johnson's case because, in the years since his trial and § 2255 proceedings, he has developed substantial evidence which,

*(cont'd)*

2

Even if the First Step Act permits or requires a district court to conduct the

§ 3553(a) analysis, the district court below committed procedural error when it

concluded that it is "not the Court's role to revisit [Mr. Johnson's 1993] jury's

determination" and it must "refuse to overturn the will of the community" as

expressed by that jury.[2]  Memorandum Order (J.A.140) (the "*Johnson*

Memorandum Order*" or "*Johnson* Order").  Although the district court

mechanically ticked through the § 3553(a) factors in considering whether to reduce

Mr. Johnson's sentences for his covered 21 U.S.C. § 841 offenses, these

concluding statements reflect that, even if Mr. Johnson's § 848 crimes were

determined to constitute "covered offenses," the district court ultimately believed

that it did not have the authority to reduce Mr. Johnson's death sentences or to

consider anything about Mr. Johnson's history and character developed post-1993.

As a result, the district court effectively refused to consider the mitigation evidence

that was never heard by Mr. Johnson's jury in 1993, including extensive evidence

---

applied using modern medical standards and case law, demonstrates that he is intellectually disabled and, therefore, cannot be executed, consistent with statutory and constitutional prohibitions.  He also now has a record established over more than two decades as a model federal inmate, information that is highly mitigating and was never considered by his original jury.

[2]   Any time a reviewing court in applying the law finds a death sentence infirm, it is of course "overturning the will" of the jury when it orders a new sentencing. A second jury, properly instructed in accordance with the appropriate law, will then represent the community.

3

of his intellectual disability and his more than two-decade record as a model inmate.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 and § 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222. That court entered its Memorandum Order denying Corey Johnson's Motion for Reconsideration of Sentence Hearing Pursuant to the First Step Act of 2018 (the "Motion") (J.A.154) and memorandum in support thereof (J.A.160) on November 19, 2020. Mr. Johnson timely filed his notice of appeal on November 20, 2020. J.A.526; *see* Fed. R. App. P. 4(b)(1), (b)(6). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

Mr. Johnson sought a reduction in his sentences under § 841 and § 848(a) and (e)(1)(A) under § 404 of the First Step Act. The First Step Act permits defendants convicted of a "covered offense" to seek a reduction in their sentences. A defendant's offense is "covered" if he was convicted under a statute that has a penalty that was altered as a result of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. The only limitations that Congress provided on this broad grant of review are that a defendant (1) must have been sentenced before the Fair Sentencing Act and (2) may only obtain relief if a previous First Step Act

4

motion was, after the date of enactment of the First Step Act, denied after a

complete review on the merits.  Mr. Johnson meets both requirements, and the

district court so found.

This case presents three issues:

1. Did the district court err as a matter of law when it concluded that Mr. Johnson was not eligible for relief under the First Step Act for his convictions under 21 U.S.C. § 848(a) and (e)(1)(A) because it found that these parts of the CCE statute were not "covered offenses" despite the fact that the statutory penalties for § 848, Mr. Johnson's statute of conviction, were modified by the Fair Sentencing Act?

2. Is a capital defendant with an eligible offense under Section 404 of the First Step Act entitled to have his sentence reconsidered not by the district court judge but by a jury?

3. If the district court, and not a jury, is permitted to reconsider the capital sentence of an eligible defendant, then did the district court err as a matter of law when it concluded it was "not the Court's role to revisit the [original] jury's determination" and that to do so "would run contrary to the goals of the First Step Act?"

## STATEMENT OF THE CASE

### I. THE PROCEDURAL HISTORY OF MR. JOHNSON'S CONVICTIONS AND SENTENCE

In 1993, Mr. Johnson was convicted, along with co-defendants James Roane

and Richard Tipton, of several drug crimes in connection with the sale and

distribution of crack cocaine: distribution of cocaine base ("crack") and possession

5

with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Counts 31 and 32);[3]

conspiracy to possess with intent to distribute 50 grams or more of crack in

violation of 21 U.S.C. § 846 (Count 1); engaging in a CCE in violation of § 848(a)

(Count 2); and murder in furtherance of a CCE in violation of § 848(e)(1)(A)

(Counts 5, 8, 11, 17-19, 24, and 25).  A jury sentenced Mr. Johnson to death for

each of the § 848(e) offenses.  The court thereafter imposed a life sentence plus 85

years for Mr. Johnson's § 848(a) conviction, and 20 and 40 years, respectively, to

run concurrently for his § 841(a) convictions.[4]

The three co-defendants raised a number of issues on direct appeal to this

Court, challenging both their convictions and their sentences.  In the course of

reviewing Mr. Johnson's claims, this Court addressed several points relevant to the

questions presented in this appeal.  First, in response to a claim that "the

indictment failed adequately to charge a CCE violation" because it failed to

identify "the three *drug*-related violations comprising the 'continuing series of

violations' element of the offense," J.A.76-77 (emphasis added), this Court noted

---

[3]  In addition, Mr. Johnson was convicted of killing and maiming in aid of racketeering under 18 U.S.C. § 1959 (Counts 4, 7, 10, 13, 14, 16, 21, 22, 23, and 27-30) and use of a firearm during and in relation to any crime of violence or drug trafficking crime under 18 U.S.C. § 924(c) (Counts 6, 9, 12, 15, 20, and 26).

[4]  The district court did not impose a separate sentence for the § 846 conviction. The Fourth Circuit later vacated this conviction.  J.A.83.

that "[t]he indictment charged in Count 2 that, in violation of 21 U.S.C. § 848, all of the appellants engaged in a CCE by violating 21 U.S.C. §§ 841 and 846." *Id.* at J.A.76-77; *see id.* at J.A.77 ("Count 2, as indicated, identified and incorporated by reference all violations of 21 U.S.C. §§ 841 and 846 charged . . . elsewhere in the indictment."). This Court further observed that "Appellants contend, *and the Government concedes*, that their several convictions and sentences on the § 848 CCE and . . . the § 846 conspiracy as charged is a lesser included offense within the § 848 CCE as charged. We agree." *Id.* at J.A.83 (emphasis added).

As a result, this Court remanded to the trial court for vacatur of the § 846 conviction.[5] This Court therefore already has determined that Mr. Johnson's § 846

---

[5] Mr. Johnson later timely filed a petition for certiorari with the U.S. Supreme Court, which was denied, and unsuccessfully pursued relief pursuant to 28 U.S.C. § 2255. After a grant of a certificate of appealability, this Court granted limited review of the issues raised therein, but ultimately denied them. The Supreme Court also denied review on those issues.

More recently, Mr. Johnson requested authorization for this Court to review his convictions under 18 U.S.C. § 924(c), following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and later *United States v. Davis*, 139 S. Ct. 2319 (2019). *See* Mot. for Authorization to File a Successive Mot. Pursuant to 28 U.S.C. § 2255(h)(2), *In re Johnson*, No. 20-8 (4th Cir. May 22, 2020). This latter motion for authorization is being held in abeyance pending the outcome of *United States v. Juan Ortiz-Orellana*, No. 16-4844 (4th Cir.), so is still pending before this Court. Mr. Johnson also has a non-successive § 2255 motion pending in district court, challenging the government's authority to implement his death sentence pursuant to 18 U.S.C. § 3596 because he is a person with intellectual disability.

*(cont'd)*

7

violation for conspiracy to possess with intent to distribute 50 grams or more of crack under § 841(b)(1)(A) was a lesser included offense of his § 848 CCE charges.

## II.    <u>**THE BACKGROUND AND OPERATION OF THE FIRST STEP ACT**</u>

On August 3, 2010, Congress enacted, and the President signed into law, the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, to address the longstanding and widespread recognition that the 1986 ADAA's penalty scheme for crack offenses was based on false assumptions, unjustifiably punished crack offenders far more harshly than other similarly situated drug offenders, and had a disproportionate impact on African-Americans.[6] *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012); *Kimbrough v. United States*, 552 U.S. 85, 96-98 (2007). Sections 2 and 3 of the Fair Sentencing Act modified the statutory penalties for violations of Title 21 involving crack by increasing the weight ranges to which § 841(b)'s statutory penalties apply.

The Fair Sentencing Act, however, is not retroactive. *See Dorsey*, 567 U.S. at 281-82.

---

None of these issues implicates the question of whether Mr. Johnson committed "covered offenses" under the First Step Act. As discussed *infra*, however, several of these matters would be relevant at such time as Mr. Johnson's sentence is reconsidered.

[6]    Mr. Johnson is African-American, as are the co-defendants and victims in this case.

To rectify the sentencing discrepancies caused by the non-retroactivity of the Fair Sentencing Act, on December 21, 2018, Congress enacted, and the President signed into law, the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (codified at 21 U.S.C. § 841 note).  Section 404 of the First Step Act states in full:

> (a)  DEFINITION OF COVERED OFFENSE. --- In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

> (b)  DEFENDANTS PREVIOUSLY SENTENCED. --- A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

> (c)  LIMITATIONS. --- No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

In sum, upon a defendant's motion to the court that imposed sentence for a violation of a federal criminal statute, for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that court may impose a reduced sentence unless (i) the defendant's sentence was previously

9

reduced pursuant to the First Step Act or (ii) if a previous motion made under the First Step Act was denied after a complete review on the merits.

Congress made clear, through its choice of language (and consistent with the legislative history of the First Step Act), that every defendant whose convictions and sentences rest on underlying crack offenses before the Fair Sentencing Act's date of enactment and who is still serving that sentence, would be eligible for imposition of a reduced sentence after individualized consideration on the merits. If a defendant is eligible, he or she is entitled to have the sentencer decide, in its discretion, whether and to what extent to impose a reduced sentence based on the applicable statutory limits, the advisory guideline range, and the sentencing purposes and factors typically considered, including the nature and circumstances of the crime, the history and character of the defendant, the need to avoid unwarranted disparities between defendants with similar records who have been found guilty of similar conduct, and the defendant's post-sentencing conduct. 18 U.S.C. § 3553.

When a claim is brought by a defendant for First Step Act relief, the Act requires a two-part process. First, the court is required to determine whether the defendant has committed a "covered offense," a determination that does not depend on the specific facts of the case or the conduct of the defendant before the court. *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020). An offense

10

must be deemed "covered" or not based on the statute of conviction itself, not on individual circumstances or the facts on the ground. *United States v. Woodson*, 962 F.3d 812, 816 (4th Cir. 2020).

Second, and only *after* the court has determined an offense is "covered," the Act requires that the defendant's sentence be reconsidered, at which point the sentencer, while not required to impose a different sentence from the one originally given, *is* required to consider the entire range of factors that go into a sentencing determination, ensuring that the sentence imposed is sufficient, but no more than necessary, to provide just and adequate punishment. *See, e.g.*, *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020).

## III.    **THE RELEVANT STATUTE OF CONVICTION**

Section 848 of Title 21 (Food and Drugs) criminalizes engaging in a CCE, conduct which involves violation of the anti-drug laws of the United States. Specifically, § 848(c) defines a CCE as follows:

> For purposes of subsection (a), a person is engaged in a continuing criminal enterprise if—
> (1) he violates any provision of this subchapter or subchapter II the punishment for which is a felony, and
> (2) such violation is part of a continuing series of violations of this subchapter or subchapter II—
> (A) which are undertaken by such person in concern with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
> (B) from which such person obtains substantial income or resources.

11

Sections 848(a) ("Penalties; forfeitures"), (b) ("Life imprisonment for engaging in continuing criminal enterprise"), and (e) ("Death Penalty") define the penalties for engaging in a CCE.  A person convicted of a CCE is punished under (a), (b), or (e) based on Congress's characterization of the severity of the CCE conduct.  Relevant here, § 848(e) provides, in part:

> (1) In addition to the other penalties set forth in this section—
> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death . . . .

In other words, § 848(e) makes eligible for execution a person either (i) who (A) engaged in a CCE and (B) killed or participated in the killing of another individual or (ii) who (A) committed conduct punishable under § 841(b)(1)(A) or § 960(b)(1) and (B) killed or participated in the killing of another individual.

In 2010, the Fair Sentencing Act modified the penalties of § 848. Specifically, Congress adjusted the penalties for offenses involving crack by increasing the threshold drug quantities required to trigger mandatory minimum sentences under § 841(b)(1).  Pub. L. No. 111-220, § 2, 124 Stat. 2372.  Per those amendments, under § 841 the quantity needed to trigger the five-year mandatory minimum was increased from 5 grams of crack to 28 grams of crack, and the

12

quantity needed to trigger the ten-year mandatory minimum was increased from 50 grams of crack to 280 grams of crack. *Id.* These changes had a ripple effect because felony violations of § 841 are predicates for violations of § 848.

## IV.  MR. JOHNSON'S CLAIM FOR FIRST STEP ACT RELIEF IN DISTRICT COURT

Mr. Johnson filed his Motion on August 19, 2020 (J.A.154),[7] in which he alleged that his convictions for violations of § 841 (Counts 31 and 32) and § 848 (Counts 2, 8, 11, 17-19, 24, and 25) constitute "covered offenses" under the First Step Act because they are violations of a "Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." J.A.173-179.

Mr. Johnson also argued to the district court that he had substantial bases from which to demonstrate that a sentence of life without the possibility of parole, rather than death, was sufficient, and not more than necessary, to punish him for his crimes. These reasons, laid out in detail and supported by expert reports and lay declarations, included numerous facts about his history and character:

- The evidence, science, and law demonstrate that Mr. Johnson is a person with intellectual disability. This evidence includes three opinions of

_____

[7]  In his Motion, Mr. Johnson first established his entitlement to bring a claim under the First Step Act, alleging that he was sentenced for crack-related offenses before the enactment of the Fair Sentencing Act and that he has never previously had his sentence reduced as a result of that Act. The government and district court conceded these facts. J.A.484 n.2; J.A.149.

13

nationally renowned experts who specialize in identifying and diagnosing intellectual disability.

- Mr. Johnson suffered horrific abuse, neglect, and abandonment throughout his childhood.

- As is often the case with people with intellectual impairments who lack life skills—particularly those who were physically and emotionally abused as children—Mr. Johnson, a follower, not a leader, was easily manipulated and would do anything to please others. This element of his character is critical to an understanding of his role in the crimes for which he was convicted.

- Mr. Johnson has an essentially flawless prison record, and a sentence reconsideration would not encourage future crime or endanger the public. Mr. Johnson has been incarcerated for 28 years, and during that time he has been a model federal inmate.

- Mr. Johnson's sentence is disproportionate compared to sentences imposed on his co-defendant Vernon Lance Thomas, who like Mr. Johnson has intellectual disability and was spared the death penalty despite being found guilty of four murders in furtherance of a CCE, and is disproportionate compared to other similarly situated defendants.[8]

- Mr. Johnson was only 22 at the time of his arrest. Now, Mr. Johnson is 52 years old and poses no threat to the prison population at large.

- Mr. Johnson has demonstrated sincere remorse. Even with his limited ability to express himself, he conveyed his profound regret and accepted responsibility for his crimes at his sentencing hearing.

Mr. Johnson also argued, consistent with First Step Act case law, that any

sentence reconsideration had to be approached using current standards of law, not

---

[8]  In this regard, Mr. Johnson not only provided evidence about Mr. Thomas's sentencing but also cited to a number of federal capital cases, involving multiple victims and/or horrific acts, in which juries nevertheless chose to impose life sentences, rather than death. J.A.204-205.

14

those in effect at the time he was originally tried and sentenced. *See, e.g.*, *Chambers*, 956 F.3d at 670-72.

Finally, Mr. Johnson argued that because, upon reconsideration of his sentences under § 848(e), he will again be eligible for a death sentence, all of the sentencing factors attendant to rendering such a decision—which requires factual determinations that may result in a sentence enhancement—must be addressed by a jury. *Ring*, 536 U.S. at 589.

## V.     **THE DISTRICT COURT'S ORDER DENYING RELIEF**

The district court issued its Memorandum Order on November 19, 2020 (J.A.140), holding that although Mr. Johnson had been convicted of two covered offenses—the two counts in the indictment charging possession of crack with the intent to distribute under § 841—none of Mr. Johnson's convictions for violations of § 848 was "covered."[9]  The district court set forth a number of reasons why it found that Mr. Johnson's § 848 convictions were not covered offenses: (i) § 848 is

---

[9]    Three weeks before issuing the *Johnson* Memorandum Order (J.A.153), the district court issued an opinion denying the First Step Act claims of co-defendant James Roane.  J.A.138-139.  The district court incorporated its reasoning from that opinion, finding Mr. Roane's convictions under § 848(e) do not constitute covered offenses, into its order denying relief to Mr. Johnson.  J.A.147.  The district court issued an additional 14-page Memorandum Order addressing issues specific to Mr. Johnson, including his contention that § 848(a) is a covered offense, and that his specific life history and circumstances, including his intellectual disability and his unblemished prison record, entitle him to a sentence of life without parole.

15

not expressly included in sections 2 and 3 of the Fair Sentencing Act, (ii) § 848(e)(1)(A) is a stand-alone statute, (iii) the § 848(e)(1)(A) violations did not rely, directly or indirectly, on any violation of § 841(b)(1)(A), and (iv) the Fair Sentencing Act was not meant to apply to Mr. Johnson's convictions.

With regard to the two § 841 covered offenses, the district court determined that Mr. Johnson had not presented evidence warranting a reduction in the sentences originally imposed for those counts. (Mr. Johnson is not appealing any actual exercise of discretion with respect to resentencing on the two § 841 covered offenses.) The district court went further, opining that, in any event, it lacked the authority to "revisit" the sentencing determination made by Mr. Johnson's 1993 jury or to consider evidence not heard by that jury.

> Throughout both the guilt and penalty phases, the jury in this case heard all of the evidence relating to Defendant's role in this drug enterprise and the eight individuals that he killed to protect his enterprise. Beyond evidence of the atrocious crimes for which it convicted the Defendant, *the jury heard evidence relating to his character.* That jury – speaking on behalf of the community – unanimously decided that this heinous serial killer deserved to die for his actions. *The Court refuses to overturn the will of the community. It is not the Court's role to revisit the jury's determination, especially when doing so would run contrary to the goals of the First Step Act.*

J.A.153 (emphasis added).

16

**STANDARD OF REVIEW**

This Court reviews *de novo* the eligibility of a defendant for relief under section 404 of the First Step Act. *Woodson*, 962 F.3d at 814; *also United States v. Wirsing*, 943 F.3d 175, 182 (4th Cir. 2019).

This Court likewise reviews *de novo* other questions of law as to statutory interpretation, including the question of whether an eligible capital defendant must have their sentence reconsidered by a district court judge, or a jury. *United States v. Ocasio*, 750 F.3d 399, 408 (4th Cir. 2014); *United States v. Stokes*, 347 F.3d 103, 105 (4th Cir. 2003).

This Court reviews the adequacy of a sentencing court's explanation for its denial of a reduced sentence under the abuse-of-discretion standard. *See Chambers*, 956 F.3d at 672-73.

**SUMMARY OF ARGUMENT**

Mr. Johnson's convictions for violations of § 848 are "covered offenses" for purposes of the First Step Act for three reasons. First, § 848, in its entirety, is the "statute of violation," the penalties for which were modified by the Fair Sentencing Act. *Wirsing*, 943 F.3d at 186; *accord Chambers*, 956 F.3d at 670. Modification of a statute "includes any change, however slight." *Woodson*, 962 F.3d at 816 (citation omitted). Here, the penalties for subsections (b) and (e) of § 848 were modified, making § 848 a statute with penalties that were modified by the Fair

17

Sentencing Act.  *United States v. Brown*, No. 08-CR-00011-1, 2020 WL 3106320, at *4 (W.D. Va. June 11, 2020).  Therefore, § 848 as a whole is a "covered offense."

Second, even if this Court concludes that § 848 should not be read in a unified way and that § 848(e) is a stand-alone statute for purposes of the First Step Act, § 848(e) is still a "covered offense."  The penalties of subsection § 848(e) were modified by the Fair Sentencing Act.  *See, e.g.*, *United States v. Davis*, No. 93-CR-30025, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020); *accord Gravatt*, 953 F.3d at 263.

Third, even if this Court concludes, as the district court did, that § 848(e) should be further parsed to its constituent parts, Mr. Johnson's offenses thereunder remain "covered offenses" under the First Step Act.  In reviewing Mr. Johnson's direct appeal of his convictions and death sentences, this Court held that his § 848(e) convictions rested on his drug conspiracy conviction and underlying drug offenses (which constituted lesser included offenses).  J.A.83, JA.93-94.  That legal determination constitutes the law of the case that bound the district court, *see, e.g.*, *United States v. Aramony*, 166 F.3d 655, 660-61 (4th Cir. 1999), and established that Mr. Johnson's § 848(e) convictions are covered offenses for First Step Act purposes.

18

The district court further erred in concluding that the court, not a jury, must reconsider the sentence for covered offenses. Because Mr. Johnson is eligible to have death sentences re-imposed for the covered offenses, Mr. Johnson is entitled to have his sentences reconsidered in the manner required by capital jurisprudence; that is, by a jury. *Ring*, 536 U.S. at 609; *United States v. Stitt*, 552 F.3d 345, 354-55 (4th Cir. 2008) ("*Stitt V*"); *also* 18 U.S.C. § 3593(c).

Even assuming that it is for the court to reconsider a death sentence under the First Step Act, the district court still erred when it concluded it lacked authority to revisit the jury's determination in this matter. *See Chambers*, 956 F.3d at 672. The court improperly based its decision on the erroneous belief that it lacked the authority to revisit the sentence imposed by Mr. Johnson's 1993 jury and that to consider evidence developed after 1993 would run contrary to the goals of the First Step Act by reconsidering that initial jury determination. This is precisely the purpose of the First Step Act, and the district court's failure to recognize its obligation was an abuse of discretion.

## ARGUMENT

### I.    MR. JOHNSON IS ELIGIBLE FOR RELIEF UNDER SECTION 404 OF THE FIRST STEP ACT BECAUSE HIS STATUTE OF CONVICTION IS § 848 AND THE PENALTIES OF § 848 WERE MODIFIED BY THE FAIR SENTENCING ACT

Mr. Johnson's entitlement to reconsideration of his sentence for his CCE offenses turns on the determination of whether his statute of conviction was

19

modified by the Fair Sentencing Act. Mr. Johnson was convicted of offenses pursuant to both subsections (a) and (e) of § 848. The statute of conviction for each of these subsections is § 848, which is a "covered offense" under the First Step Act.

### A.    Section 848 in Its Entirety Is a Covered Offense

#### 1.    The Plain Language and Structure of § 848 Compel a Unitary Reading That Makes All Offenses Therein Covered Offenses

By its plain language and construction, § 848 is a single "Federal criminal statute." This is so because all of the crimes punished by the statute rest on an initial determination that the accused engaged in a CCE specifically defined by § 848(c). Subsection 848(c) necessarily involves drug offenses, and the drug offenses charged in this case—distribution of crack and possession with intent to distribute in violation of § 841(a)(1) (Counts 31 and 32) and conspiracy to possess with intent to distribute 50 grams or more of crack in violation of § 846 (Count 1)—carried penalties that were modified by the Fair Sentencing Act. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372. Subsection (d) of the statute restricts the sentencer from suspending sentence or imposing a term of probation or parole for a violation under any provision of the statute, and subsections (a), (b), and (e) each lay out additional elements that, if

20

found, carry specific penalties.[10]  None of the violations under these subsections can exist independent of subsection (c).  Thus, § 848 as a whole—or § 848(c), which describes the critical CCE conduct necessary to violate § 848—is the statute of conviction for purposes of the First Step Act, and at least some of its penalties were modified by the Fair Sentencing Act because § 848 incorporates drug offenses (*e.g.*, § 841) the penalties for which were modified by the Fair Sentencing Act.[11]  Section 848 therefore is a covered offense regardless of whether only some of its penalties were modified.

This outcome is consistent with government concessions in other First Step Act litigation.  In other litigation, the government conceded that an offense is a covered offense under the First Step Act where the statute under which the movant was convicted makes reference to, or has as a predicate, a statute amended by the Fair Sentencing Act.  These concessions came in cases involving § 848(b) and (e). *See, e.g.*, United States' Mot. to Remand at 8, *United States v. Maupin*, No. 19-

---

[10]  21 U.S.C. § 848 "Continuing Criminal Enterprise."  The penalties for a violation of subsection (a) range from a minimum of 20 years to life imprisonment and include significant forfeiture provisions.  The penalties for violation of subsection (b) require imprisonment for life.  The penalties for violation of subsection (e) range from a minimum of 20 years imprisonment to a life sentence or a sentence of death.

[11]  *See supra* at 12-13.  *See also United States v. Smith*, 954 F.3d 446, 448-50 (1st Cir. 2020).

(cont'd)

6817 (4th Cir. Aug. 29, 2019), ECF No. 26; *Davis*, 2020 WL 1131147, at *2 ("The government acknowledges that the defendant is eligible for a sentence reduction under the 2018 FSA for all three counts, including Count Two due to § 848's requirement of a § 841(b)(1)(A) violation.").[12]

Moreover, this Court already laid the groundwork for how to determine a "covered offense" for purposes of the First Step Act and that approach drives toward the result sought by Mr. Johnson. In *Wirsing*, the Court held that "[t]he most natural reading of the First Step Act's definition of 'covered offense' is that 'the statutory penalties for which were modified by [certain sections of the Fair Sentencing Act]' refers to 'a Federal criminal statute' rather than 'a *violation* of a Federal criminal statute.'" 943 F.3d at 185 (second alteration in original) (citation omitted); *see also United States v. Boulding*, 960 F.3d 774, 779 (6th Cir. 2020); *United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020) (holding that "the statute of conviction alone determines eligibility for First Step Act relief"); *Smith*, 954 F.3d at 448-49.[13] In *Wirsing*, this Court emphasized that Congress gave no

---

[12] The government has subsequently expressly taken back this concession in the case of one of the *Davis* co-defendants.

[13] Courts, for example, are *not* to concern themselves with the actual quantities of crack involved in the offense. *Wirsing*, 943 F.3d at 185-86; *see also United States v. Jackson*, 964 F.3d 197, 206 (3d Cir. 2020) (holding that "§ 404 eligibility turns on a defendant's statute of conviction, not on his possession of a certain quantity of drugs").

22

indication when passing the First Step Act that it "intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis." *Wirsing*, 943 F.3d at 186; *see also Brown*, 2020 WL 3106320, at *4. Here, contrary to the conclusion of the district court, *Wirsing* counsels for reading § 848—the "Federal criminal statute"—as a unitary whole that is the "covered offense."

Extending the analysis of *Wirsing*, this Court in *Woodson* undertook a comprehensive analysis of what the First Step Act means when it uses as a focal point in the "covered offense" determination a modification of penalties by the Fair Sentencing Act to the statute of conviction. The Court rejected the government's argument that the specific penalties the defendant was subject to must have been explicitly amended by Section 2 or 3 of the Fair Sentencing Act in order for his violations to constitute a "covered offense." Instead, the Court explained that the defendant's convictions under both § 841(b)(1)(B)(iii) and (b)(1)(C) had been "modified" by the Fair Sentencing Act even though neither Section 2 nor 3 of the Fair Sentencing Act referred to them directly. This is because Section 2 of the Fair Sentencing Act changed the applicable drug weights triggering a sentence within § 841(b)(1)(C), which had *the effect* of changing the penalty. Thus, Congress had no need to modify the text of these provisions in order to affect the penalties connected to them. *Woodson*, 962 F.3d at 815. This reading, the Court noted,

23

"accords with the ordinary meaning of the term 'modified,' which 'includes any change, however slight.'" *Id.* at 816 (citation omitted).

> The Court in *Woodson* also explained that

> the relevant change for purposes of a "covered offense" under the First Step Act is a change to the statutory penalties for a defendant's statute of conviction, not a change to a defendant's particular sentencing range as a result of the Fair Sentencing Act's modifications. *See Wirsing*, 943 F.3d at 185-186. Section 2 of the Fair Sentencing Act shifted the entire sentencing scale for crack cocaine trafficking offenses.

*Id.* at 816-17. The Court concluded that "even defendants whose offenses remain within the same subsection after Section 2's amendments are eligible for relief," even if Section 2 of the Fair Sentencing Act did nothing to lower the maximum statutory sentence or any mandatory minimum. *Id.* at 817.

Recently, a district court in the Western District of Virginia applied this Court's framework to § 848 and concluded both that § 848 in its entirety is the "statute of conviction" and that it is a "covered offense." *Brown*, 2020 WL 3106320, at *4. Employing the plain reading this Court has accorded the definition of "statute of conviction," *Wirsing*, 943 F.3d at 186, the district court in *Brown* noted that the "most straightforward solution" was to consider § 848 in its entirety as the statute of conviction. *Brown*, 2020 WL 3106320, at *4; *see also United States v. Dean*, No 97-276(3), 2020 WL 2526476, at *3 (D. Minn. May 18, 2020) (holding that § 848 is the statute of conviction and that convictions under § 848(a) are eligible under the First Step Act as a result). These decisions are correct

24

because, had it chosen to, Congress could have limited the First Step Act's coverage only to those crimes committed under § 841, or to non-violent offenses, or to non-CCE offenses, or directed the courts to consider only "offenses" for which the penalty had been modified. Congress did not choose any of these routes, and the courts applying the First Step Act must assume Congress meant what it said. *See, e.g.*, *Gravatt*, 953 F.3d at 264 (If Congress had intended for the First Step Act not to apply in a certain manner, "it could have included that language. But it did not. We decline to expand the limitations crafted by Congress.").

The court in *Brown* reached the same result via a more specific route, as well. It determined that, given the brevity of § 848 and its focus on one type of conduct—CCE—§ 848 must be considered a unitary whole, punishing acts that involve CCEs. 2020 WL 3106320, at *4. As such, § 848(c) stands as the centerpiece of the statute and defines what constitutes a CCE. *Id.* Sections 848(a), (b), and (e) then define various penalties to be imposed, depending on additional factors described within each of those subsections, but which all fall under the "umbrella" created by § 848(c).[14]

---

[14] *Brown*, 2020 WL 3106320, at *4. The court in *Brown* noted, for example, that Congress titled § 848(a) "Penalties; Forfeitures," and § 848(e) "Death Penalty." *Id*. Subsection 848(b) is likewise entitled "Life imprisonment for engaging in continuing criminal enterprise." *Id.* at *2. All three sections define levels of punishment based on the commission of a CCE in connection with drug trafficking. *See Merit Mgmt. Grp., LP, v. FTI Consulting, Inc.*, 138 S. Ct. 883,

*(cont'd)*

25

The court in *Brown* then determined that, because some of the penalties for violations of § 848 have been modified, the statute of conviction as a whole has been modified, and violations under any provision of it are, therefore, covered offenses.[15]  In this regard, the court in *Brown* noted (as the government had conceded) that § 848(b) was modified by the Fair Sentencing Act.  2020 WL 3106320, at *2.  The court also noted that a sister court had previously found that the penalty imposed under § 848(e)(1)(A) was modified by the Fair Sentencing Act.  *Id.* at *4 (citing *Davis*, 2020 WL 1131147, at *2).  The court thus concluded that § 848 is a covered offense *in toto* "because at least one of the penalties . . . was modified by Section 2 or 3 of the Fair Sentencing Act."  *Id.*  Thus, any violation of § 848—that is, any CCE as defined by § 848(c) and punished under any provision of § 848—constitutes a covered offense.

Numerous district courts around the country, including the Eastern District of Virginia and others within the Fourth Circuit, have also determined that § 848 is

---

893 (2018) ("Although section headings cannot limit the plain meaning of a statutory text, 'they supply cues' as to what Congress intended." (citation omitted)).

[15]  The defendant in *Brown* was granted a reduction of sentence for his § 848(a) offense.  The government has not appealed the district court's decision in his case.

*(cont'd)*

26

a covered offense.[16]  These decisions comport with precedent, reason, and the

public policy behind the First Step Act—that the determination of what constitutes

a "covered offense" be uncomplicated, broad, and categorical.

### 2. The District Court Erred When It Rejected the Unitary, Plain-Language Reading of § 848 for a Reading Relying on Inapposite Authority

The district court erred from the outset when it ignored the plain meaning of

the word "statute," and instead looked to specific subsections of § 848 to unduly

narrow the range of the First Step Act's application.  By reading "covered offense"

to mean something less than the entire statute at issue, the district court violated

this Court's guiding principle that Congress intended for application of the First

Step Act to be uncomplicated and supportive of eligibility for resentencing.

*Wirsing*, 943 F.3d at 186.  The district court rejected its sister court's conclusion in

*Brown* that § 848 is a single, unitary statute that defines CCEs as based on illegal

drug distribution and establishes punishments for engaging in them.  The district

---

[16] *See, e.g.*, Order at 5, *United States v. Kelly*, No. 94-CR-163-4 (E.D. Va. June 5, 2020); *Wright v. United States*, 425 F. Supp. 3d 588, 598 (E.D. Va. 2019); Order at 1, *United States v. Groves*, No. 94-CR-97 (E.D.N.C. Nov. 21, 2019); *Dean*, 2020 WL 2526476, at *3; *United States v. Jimenez*, No. 92-CR-550-01, 2020 WL 2087748, at *2 (S.D.N.Y. Apr. 30, 2020); Mem.-Dec. and Order at 4, *United States v. Hines*, No. 94-CR-150 (N.D.N.Y. Nov. 8, 2019), ECF No. 607; Mem.-Dec. and Order at 4, *United States v. Walker*, No. 95-CR-101 (N.D.N.Y. Oct. 25, 2019), ECF No. 620; Dec. and Order at 4, *United States v. Robinson*, No. 98-CR-60 (E.D. Wis. Sept. 27, 2019), ECF No. 606.

27

court relied on *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), claiming that this Court determined there that § 848(e) was a stand-alone offense, and that, therefore, § 848 cannot be a unitary statute for purposes of the First Step Act.

The district court's analysis, built on *NJB*, is flawed in at least two ways. First, in *NJB*, this Court was looking at the narrow and very different question as to whether the government had given a juvenile defendant proper notice that the *offense* he had committed (not the statute he had violated) was a crime of violence for which his case could be transferred and he could be prosecuted as an adult. *Id.* at 632. The Court was never asked what his "statute of conviction" might be.

Second, the district court did not address the inconsistencies with the plain language of § 848 that applying *NJB* here creates. The district court never explained how a stand-alone statute of conviction (§ 848(e) in the court's view), which requires the commission of a CCE, could fail to define what constitutes a CCE. In addition, the district court did not explain why, for example, if § 848(e) is a stand-alone statute, it begins with the language, "In addition to the other penalties set forth in this section."

The district court's blinders to the plain and distinct language of the First Step Act and its misapplication of and mistaken reliance upon *NJB* were reversible errors. The plain language and structure of the First Step Act and § 848 require this Court to find that § 848 is the statute of conviction for violations of both

28

subsections (a) and (e) and that both are "covered offenses," and that nothing in

*NJB* compels a contrary conclusion.

**B.     Even if Subsection 848(e) Is a Stand-alone Statute, It Is a Covered Offense Because Its Penalties Were Modified by the Fair Sentencing Act**

Even if § 848(e) is considered a stand-alone statute, offenses committed

pursuant to it must still be deemed "covered offenses" because the Fair Sentencing

Act modified penalties for crack offenses embedded in § 848(e). The Fair

Sentencing Act modified the penalties for violation of § 848(e), specifically in

§ 848(e)(1)(A), which provides:

**(e) Death Penalty**

(1) In addition to the other penalties set forth in this section --

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death[.]

The quantities of crack that now constitute a violation of § 841(b)(1)(A) were

explicitly changed by Section 2 of the Fair Sentencing Act. Thus, someone who

could have been convicted for crack distribution offenses under § 841 prior to

passage of the Fair Sentencing Act would no longer be chargeable under

§ 848(e)(1)(A). While, by its terms, the First Step Act does not invalidate these, or

29

any other, convictions under § 841 or § 848, someone being charged today may have to be charged differently from the way he or she would have been before passage of the Fair Sentencing Act.[17]  Thus, the Fair Sentencing Act modified penalties applicable to § 848(e)(1)(A), and, therefore, convictions under the § 848(e) "statute" must be deemed "covered offenses."

Even assuming the district court's reasoning was correct (and it was not, given this Court's analysis in *Wirsing* and *Woodson*), and even if the statute of conviction for violations of § 848(e) is the subsection itself for purposes of the "covered offense" analysis, the district court still erred in rejecting the straightforward analysis above and finding that § 848(e) is not a covered offense. Subsection 848(e)(1)(A) describes three alternative means for committing a CCE murder: that the offender committed a violation of § 841(b)(1)(A) or § 960(b)(1), or that he or she participated in a CCE.  Because a violation of § 848(e) may rest on a violation of § 841(b)(1)(A), the statute of conviction has been modified and is a "covered offense."

---

[17]  For example, prior to 2010, the five-year mandatory minimum in § 841(b)(1) was triggered by 5 grams of crack and the ten-year mandatory minimum was triggered by 50 grams of crack.  21 U.S.C. § 841(b)(1) (2009).  In the Fair Sentencing Act, Congress adjusted the triggers by increasing the threshold quantities to 28 grams and 150 grams, respectively.  Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372.

In rejecting the plain reading of § 848(e)(1)(A), the district court cited with approval the Sixth Circuit's decision in *United States v. Snow*, 967 F.3d 563 (6th Cir. 2020). In *Snow*, the circuit court reasoned that even that part of § 848(e) that expressly incorporates § 841(b)(1)(A) is not a covered offense because, if the Fair Sentencing Act were read otherwise, Snow today would no longer be guilty of the underlying § 841(b)(1)(A) offense and, therefore, could not be convicted of the § 848(e) offense at all. *Snow*, 967 F.3d at 565. The circuit court concluded, therefore, that the Fair Sentencing Act did not "modify" the penalties for § 848(e)(1)(A). *Id.*

The reasoning of both the Sixth Circuit and the district court in Mr. Johnson's case is flawed. The First Step Act does not vacate any convictions, including those for § 841(b)(1)(A). It merely defines "covered offenses" and permits a sentencer to reduce the sentence for someone convicted of that covered offense. Since the underlying § 841(b)(1)(A) conviction remains intact under the First Step Act, so, too, does the § 848(e)(1)(A) conviction. The First Step Act merely entitles the violator to petition the court for a reduced sentence because the Fair Sentencing Act affected the penalties for both statutes of conviction—§ 841(b)(1)(A) and § 848(e)(1)(A).

31

**C.    The District Court's Attempt to Parse § 848(e) into Fragments to Exclude Mr. Johnson from First Step Act Relief Suffers Additional Fatal Flaws**

In addition to reading § 848(e) as a stand-alone statute disconnected from the whole of § 848, the district court parsed the term "statute of conviction" even further to split § 848(e) into even more components. It assumed that Mr. Johnson's § 848(e) convictions were predicated on the CCE prong, which does not expressly reference § 841(b)(1)(A). This type of parsing fails for three principal reasons.

First, this approach is inconsistent with the First Step Act's categorical approach that only requires a modification to the penalties for a defendant's "statute of conviction." *Gravatt*, 953 F.3d at 262 ("Under the Act, there is no eligibility requirement beyond the threshold question of whether there is a 'covered offense.'" (citation omitted)).

Second, even if the First Step Act permitted a district court to parse a statute as the district court did in Mr. Johnson's case on the assumption that Mr. Johnson was convicted under a § 848(e) prong that does not explicitly reference § 841, that would make no difference here. As this Court determined on direct appeal, Mr. Johnson's § 848 convictions were predicated on his conviction on Count 1—conspiracy to distribute cocaine in violation of § 846—which in turn rested on violations of § 841(b)(1)(A). *See supra* at 6-7. Moreover, this Court vacated Mr.

32

Johnson's conviction for Count 1, holding that his conspiracy conviction was a lesser included offense of each of Mr. Johnson's § 848(e) convictions.[18]  This determination is the law of the case under which the district court was bound.[19]

Third, even still, the district court insisted that § 848(e) cannot be a covered offense because the sentencing ranges for the offense before and after the Fair Sentencing Act are identical.  J.A.121-122.  In both circumstances, Mr. Johnson would have faced either death or life in prison with a 20-year mandatory minimum, and, therefore, there is no reduced sentence or any change in the jury instruction that could be given.  *Id.*  Contrary to the opinion of the district court, the determination of eligibility does not turn on whether Mr. Johnson's sentence ranges would have been different had the Fair Sentencing Act been in effect at the time of his original sentencing.  Such reasoning directly contravenes *Wirsing*, 943 F.3d at 186, and *Woodson*, 962 F.3d at 816-17.  Indeed, under § 841(b)(1)(C)—

---

[18]  *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

[19]  *See, e.g.*, *Aramony*, 166 F.3d at 660-61 ("Under law of the case principles, our rejection of [a defendant's] argument became the law of the case . . . . Therefore, unless [exceptional circumstances not applicable existed], we are precluded from addressing the argument a second time.").  The cabined exceptions identified in *Aramony* are limited to (1) a subsequent trial or hearing that produced substantially different evidence, (2) controlling authority that subsequently made a contrary decision of law applicable, and (3) the conclusion that the prior decision was erroneous and would work a manifest injustice.  *Id.*  None of those exceptions apply here.

the statute at issue in *Woodson*—defendants are subject to the same sentencing range (0-20 years) to which they were subject before the Fair Sentencing Act, yet this Court found that § 841(b)(1)(C) is a covered offense. *See also Smith*, 954 F.3d at 451 ("The fact that the prescribed sentencing range . . . did not change is immaterial."). The same is true here with respect to § 848(e).

Finally, the district court reasoned that Congress could not have intended to cover § 848(e)—an offense directed at violent drug kingpins—when it defined what constitutes a "covered offense." This reasoning, too, is flawed. First, had Congress intended the First Step Act to exclude from coverage offenses under § 848 or § 848(e), it could easily have said so. *See, e.g.*, *Gravatt*, 953 F.3d at 264 ("If Congress intended for the Act not to apply . . ., it could have included that language. But it did not. We decline to expand the limitations crafted by Congress.").[20] Instead, because Congress was interested in eliminating racial disparities in sentencing, it constructed the First Step Act to make a broad swath of offenders eligible for a substantive review of their sentences, with regard only to

---

[20] The Supreme Court has "long held that the *expressio unius* canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it,' *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003), and that the canon can be overcome by 'contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion,' *United States v. Vonn*, 535 U.S. 55, 65, 122 S.Ct. 1043, 152L.Ed.2d 90 (2002)." *Marx v. General Revenue Corp.*, 568 U.S. 371, 381 (2013).

34

their statute of conviction, while leaving to the sentencer's discretion the determination as to whether the particular "nature and circumstances" of their crimes, and personal history and character, warranted a sentence reduction, as required under § 3553(a), *see, e.g.*, *Gravatt*, 953 F.3d at 264; *Wirsing*, 943 F.3d at 186, or, for capital cases, by 18 U.S.C. § 3592 and long-established principles of capital jurisprudence.[21]

This Court should reject the district court's strained analysis—divorced from the categorical approach mandated by this Court's First Step Act rulings and influenced by its disdain for the underlying offenses[22]—which violates important

---

[21]  After all, to the extent that an offender became eligible for sentences of life imprisonment and death because of having committed an offense involving crack rather than powder cocaine, that same racial disparity in sentencing inevitably persists.  And courts have granted sentence reductions, even while acknowledging that the defendant had committed acts of violence and been engaged in high-level drug distribution operations.  *See, e.g.*, *Wright*, 425 F. Supp. 3d at 599 (reducing defendant's sentence for his covered offenses, while acknowledging he committed violent acts as part of the drug conspiracy); *Davis*, 2020 WL 1131147, at *2 (finding that Mr. Davis's convictions were covered offenses, including his murder in furtherance of a continuing criminal enterprise, in violation of § 848(c)(1)(A) and 18 U.S.C. § 2).

[22]  The district court referred to Mr. Johnson as a "[c]onvicted serial killer" and a "heinous serial killer."  J.A.140, J.A.153.  The district court described in detail across a number of pages the specific murders Mr. Johnson was convicted of even though that information is not relevant to the First Step Act analysis.  *Id.* at J.A.141-142.  The district court included in its analysis the danger Mr. Johnson poses to society—calling him the "ultimate danger to the community" and a "lethal drug dealer"—as a reason to deny relief, *id.* at J.A.151, even though, under the requested relief, Mr. Johnson would not be released from prison for the remainder of his life.

analytic precepts already framed by this Court and properly implemented by other district courts in this Circuit.

## II.    IF THIS COURT DETERMINES THAT MR. JOHNSON COMMITTED COVERED CAPITAL OFFENSES, MR. JOHNSON IS ENTITLED TO HAVE HIS SENTENCE RECONSIDERED BY A JURY

A movant, like Mr. Johnson, seeking resentencing on a capital covered offense pursuant to the First Step Act is entitled to have a jury reconsider the recommendation that the court impose the death penalty.  Section 404(b) of the First Step Act provides, "A court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence."  Under § 848(*l*), a "court . . . sentence[s] the defendant to death," but only "[u]pon the [jury's] recommendation . . . that the sentence be imposed."  21 U.S.C. § 848(*l*) (1988) (repealed 2006); *see also* 21 U.S.C. § 848(m) (1988) (repealed 2006).  *Accord* 18 U.S.C. §§ 3591, 3592, 3593.[23]  Although it predates the First Step Act by decades, § 848(i)(1)(B) envisioned re-impaneling a jury to make a recommendation for a court to impose.  It provides for the impaneling of a jury "after initial imposition of a sentence under this section, [when] redetermination of the sentence under this section is necessary."  21 U.S.C. § 848(i)(1)(B)(iv); *accord* 18 U.S.C.

---

[23]    *See infra* at 38-39.

§ 3593(b)(2)(D) (reciting identical language except replacing redetermination with reconsideration).

Because Mr. Johnson would still be death-penalty eligible upon a sentencing reconsideration pursuant to the First Step Act, a jury must be impaneled to redetermine a recommendation—which could include a sentence of death—to the court; otherwise, without that jury, the court could not reimpose the death penalty. The district court's failure to recognize Mr. Johnson's right to jury reconsideration of his death sentences was erroneous.

The district court appears to have concluded that it, and not a jury, would consider resentencing if Mr. Johnson's capital convictions were covered offenses. When discussing the capital offenses and the sentencing jury's recommendations, the district court stated, "The Court refuses to overturn the will of the community. It is not the Court's role to revisit the jury's determination . . . ." J.A.153. The district court's refusal to revisit a jury's evaluation as the will of the community only makes sense if the court would decline to impanel a new jury to express the will of the community. Accordingly, the district court essentially concluded that Mr. Johnson is not entitled to a jury for reconsideration of his capital covered offenses. That conclusion is reversible error because only a jury can reconsider whether or not to reduce Mr. Johnson's death sentences to life in prison, after a properly conducted evidentiary proceeding.

37

Mr. Johnson was sentenced to death in 1993 under a statutory regime that required the jury to consider designated mitigating factors similar to those prescribed under § 3553(a), such as:

- Mr. Johnson's capacity to appreciate the wrongfulness of his crime,

- his age at the time of the crime,

- his lack of a prior criminal record,

- whether another defendant or defendants, equally culpable in the crime, will not be punished by death, and

- any other mitigating factor offered by the defendant.

*See Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *Skipper v. South Carolina*, 476 U.S. 1, 8 (1986); ADAA, 21 U.S.C. § 848(m) (1988) (repealed 2006).  The ADAA's capital sentencing provisions have now been superseded by 18 U.S.C. § 3592, which also sets out both specific and non-specific mitigating factors the jury must consider, and 18 U.S.C. § 3593, which also requires capital sentencing to be done by a jury, *see* 18 U.S.C. § 3593(b)(2)(D) (where defendant is subject to the death penalty, a sentencing hearing shall be conducted "before a jury impaneled for purposes of the hearing if . . . after initial imposition of a sentence under this section, reconsideration of the sentence under this section is necessary"); *see also Hurst v. Florida*, 136 S. Ct. 616, 624 (2016).

38

This Court has likewise held that a jury, not a court, must be the factfinder with respect to a federal capital resentencing. *Stitt V*, 552 F.3d at 354-55 (finding that a defendant who was sentenced to death under § 848(e)(1)(A) and whose sentence was vacated and reconsidered after § 848 (g)-(r) were repealed by Congress, was entitled to a jury resentencing under § 848(i)(1)(B)(iv)).

The implications of the *Stitt* opinions go beyond merely preserving the right to jury resentencing despite the repeal of § 848 (g)-(r). An earlier decision in *Stitt* addressed the relief available for capital litigants under 28 U.S.C. § 2255. *United States v. Stitt*, 459 F.3d 483, 486-87 (4th Cir. 2006) ("*Stitt IV*"). *Stitt IV* demonstrates that, when a statute provides relief applicable to both non-capital and capital defendants, the courts have the equitable obligation to provide appropriate relief for capital defendants notwithstanding that statutory language appears to provide a mechanism for relief only to non-capital defendants. *See id*. at 485 (holding that because *Andrews v. United States*, 373 U.S. 334 (1963), required resentencing before a grant of relief pursuant to § 2255 could be appealed where that relief involved a capital case, a jury was required). In fashioning appropriate relief for capital defendants, the court must select a procedure that comports with established principles of Eighth Amendment jurisprudence and statutory provisions that reflect those principles—by impaneling a jury to resentence.

Thus, although the First Step Act speaks in terms of a *"court"* engaging in reconsideration of an eligible movant*'*s sentence, applying this provision to a capital litigant, a jury must be impaneled to engage in the necessary sentencing determination.[24]  Once a jury has determined whether to resentence Mr. Johnson to death or to life without possibility of parole, the district court would determine whether Mr. Johnson is entitled to any other sentence reductions for his non-capital covered offenses.

Mr. Johnson's 1993 jury was not presented with the wealth of critical evidence about his background and development.  Now, nearly 30 years later, a full record of Mr. Johnson's intellectual disability, severe impairments, childhood abuse, and a more than two-decade record of compliant incarceration exists.  This evidence is far more powerful and compelling than the evidence the original jury heard during the penalty phase of trial.  Both a new capital sentencing jury (and the district court for covered non-capital offenses) are authorized to consider evidence and other sentencing factors that were not presented at the time of sentencing—in fact, both are required to do so.  *Chambers*, 956 F.3d at 675 ("Having concluded that the § 3553(a) factors apply in the § 404(b) context, post-sentencing evidence

---

[24]     *See, e.g.*, *Stitt IV*, 459 F.3d at 485.  Precisely the same language is used in § 2255 itself—if the court finds a violation, "the court shall vacate and set aside the judgment . . . or discharge the prisoner or resentence him"—but the courts have uniformly found that where a new sentencing is required for a capital defendant, it must be done by a jury. *E.g.*, *Stitt V*, 552 F.3d at 354-55.

40

'may be highly relevant to several of [those] factors.'") (quoting *Pepper v. United States*, 562 U.S. 467, 491 (2011)). And the sentencer—here, a jury at a new capital sentencing hearing, with respect to Mr. Johnson's death-sentenced counts—is required to examine all factors offered to demonstrate that a sentence of life imprisonment is sufficient, *and not more than necessary*, to effectuate the goals of sentencing. 18 U.S.C. § 3553(a); *Chambers*, 956 F.3d at 675; *also Lockett*, 438 U.S. at 604 ("[T]he fundamental respect for humanity underlying the Eighth Amendment [mandates] consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death."); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (The sentencer must "consider[] in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind.").

In light of these statutory and constitutional requirements,[25] Mr. Johnson asks this Court to remand his case for a capital sentencing proceeding before a jury, at which he will be entitled to present evidence, *inter alia,* concerning his intellectual disability, his chaotic and abusive childhood, and his post-incarceration rehabilitation, J.A.184-211, in aid of the jury's determination whether to impose a

---

[25] *See Stitt V*, 552 F.3d at 354-55; 21 U.S.C. § 848(g); 18 U.S.C. § 3593; *see also Hurst*, 577 U.S. at 94; *Ring*, 536 U.S. at 609.

41

sentence of death or of life without possibility of parole for his covered capital

offenses. *See United States v. Martin*, No. 19-3905, 2020 WL 3251021, at \*2 (6th

Cir. June 16, 2020) (finding that the "district court erred in limiting what

information it could consider for resentencing under the First Step Act"); *Wright*,

425 F. Supp. 3d at 597.

**III. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT INDICATED IT WOULD REFUSE TO REDUCE MR. JOHNSON'S SENTENCE IF IT FOUND THAT HE HAD COMMITTED COVERED CAPITAL OFFENSES**

Even if the district court, rather than the jury, is deemed the appropriate

sentencer for Mr. Johnson's capital offenses, it must consider all evidence offered

in mitigation. But the district court made clear that, even assuming that the § 848

convictions were covered offenses, it could not alter the jury's sentencing

determination. The district court erred as a matter of law when it announced it was

"not the Court's role to revisit the jury's determination" of a sentence rendered 17

years before the passage of the Fair Sentencing Act and 25 years before passage of

the First Step Act. This refusal to acknowledge its discretion constituted

procedural error and an abuse of discretion.

Mr. Johnson proffered for the court a number of bases, supported by

substantial evidence, as to why a sentencing reduction would be appropriate,

including, *inter alia*, his intellectual disability and his more than two-decade post-

conviction record as a model federal prisoner, evidence that the jury never

42

considered. Mr. Johnson's request was consistent with this Court's precedent providing that when a defendant has a covered offense, the factfinder must review all the § 3553(a) evidence *now* available in determining whether to reduce the defendant's sentence. *See Chambers*, 956 F.3d at 675 ("Having concluded that the § 3553(a) factors apply in the § 404(b) context, post-sentencing evidence 'may be highly relevant to several of [those] factors.'") (quoting *Pepper*, 562 U.S. at 491). As this Court explained in *Chambers*, section 404(b) of the First Step Act instructs the court to "impose" sentence, not merely reduce or accept what a previous sentencer has done. *Id.* at 674. And it is precisely the new sentencer's role to impose a new sentence, irrespective of the sentencing decisions made at trial; this is, in fact, the *raison d'etre* for the First Step Act. *Chambers*, 956 F.3d at 675; *Martin*, 2020 WL 3251021, at *2 (finding that the "district court erred in limiting what information it could consider for resentencing under the First Step Act").[26]

The district court nevertheless turned a blind eye to the § 3553(a) factors presented by Mr. Johnson. Although the court reflexively went through the motions of ticking through some of them, the court effectively refused to consider

---

[26] To the extent the district court considered this evidence at all in the context of considering Mr. Johnson's § 841 offenses, the court relegated it to a passing reference. J.A.150 ("Moreover, the Court has considered the evidence of the mitigating factors that Defendant has raised in his Motion, including his neglectful and abusive childhood and his intellectual disability.").

43

these factors because ultimately it believed it had no authority to reduce Mr. Johnson's sentence. While a court can decide not to reduce any defendant's sentence under the First Step Act, a court cannot choose to do so based on the false premise that Congress has not authorized it to do so. Nor can a court decide not to reduce any defendant's sentence under the First Step Act based on a prior determination of the court or a jury that did not include consideration of currently existing, substantial, and weighty additional mitigating evidence. In Mr. Johnson's case, the district court erred in both regards by flatly declaring it would not disturb the jury's verdict even though his First Step Act motion summarized compelling and significant new mitigating evidence developed since the jury rendered its verdict. The district court's belief that it was "not the Court's role to revisit the jury's [27-year-old] determination" and that doing so "would run contrary to the goals of the First Step Act," J.A.153, is an error of law that necessarily constitutes an abuse of discretion. *See United States v. Jackson*, 952 F.3d 492, 495-97 (4th Cir. 2020). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (citation omitted); *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) ("When a court bases its decision on an error of law, it necessarily abuses its discretion.").

## CONCLUSION

For all of the foregoing reasons, Mr. Johnson asks this Court to find that he is eligible to have his sentences, originally imposed pursuant to 21 U.S.C. § 848(a) and (e), reconsidered under the terms of the First Step Act.  With regard to his § 848(e) capital offenses, he asks this Court to instruct the district court to impanel a jury for the purpose of imposing sentences based on current law and the full array of evidence, including the evidence developed post-conviction, as contemplated by this Court in *Chambers* and by the terms of 18 U.S.C. § 3593, and consistent with capital jurisprudence.

Dated: December 28, 2020                Respectfully submitted,


                                        /s/ Donald P. Salzman
                                        Donald P. Salzman
                                        Jonathan Marcus
                                        David E. Carney
                                        Skadden, Arps, Slate, Meagher & Flom, LLP
                                        1440 New York Avenue, NW
                                        Washington, DC 20005
                                        (202) 371-7983
                                        donald.salzman@skadden.com

                                        *Counsel for Corey Johnson*

45

## CERTIFICATE OF COMPLIANCE

1.    This brief contains 11574 words, excluding the parts of the brief exempted from the word count by Local Rule 27(d)(2) and Rule 32(f).

2.    This brief complies with the font, spacing, and type size requirements set forth in Local Rule 32(a)(5).

/s/ Donald P. Salzman

# STATUTORY ADDENDUM
## (Relevant Excerpts)

**Key Statutes**

18 U.S.C. § 3593 ................................................................................ADD-1

21 U.S.C. § 841 ................................................................................ADD-5

21 U.S.C. § 848 (1988) (repealed 2006) ......................................ADD-19

21 U.S.C. § 848 ..............................................................................ADD-31

Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2-3, 124 Stat. 2372 ...ADD-34

First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5222.............ADD-35

ADD-i

UNITED STATES CODE ANNOTATED
TITLE 18. CRIMES AND CRIMINAL PROCEDURE
PART II. CRIMINAL PROCEDURE
CHAPTER 228. DEATH SENTENCE

**18 U.S.C. § 3593. Special hearing to determine wheather a sentence of death is justified**

\*    \*    \*    \*    \*

(a) Notice by the government.--If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

(b) Hearing before a court or jury.--If the attorney for the government has filed a notice as required under subsection (a) and the defendant is found guilty of or pleads guilty to an offense described in section 3591, the judge who presided at the trial or before whom the guilty plea was entered, or another judge if that judge is unavailable, shall conduct a separate sentencing hearing to determine the punishment to be imposed. The hearing shall be conducted--

(1) before the jury that determined the defendant's guilt;

(2) before a jury impaneled for the purpose of the hearing if--

ADD-1

(A) the defendant was convicted upon a plea of guilty;

(B) the defendant was convicted after a trial before the court sitting without a jury;

(C) the jury that determined the defendant's guilt was discharged for good cause; or

(D) after initial imposition of a sentence under this section, reconsideration of the sentence under this section is necessary; or

(3) before the court alone, upon the motion of the defendant and with the approval of the attorney for the government.

A jury impaneled pursuant to paragraph (2) shall consist of 12 members, unless, at any time before the conclusion of the hearing, the parties stipulate, with the approval of the court, that it shall consist of a lesser number.

(c) Proof of mitigating and aggravating factors.--Notwithstanding rule 32 of the Federal Rules of Criminal Procedure, when a defendant is found guilty or pleads guilty to an offense under section 3591, no presentence report shall be prepared. At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. For the purposes of the preceding sentence, the fact that a victim, as defined in section 3510, attended or observed the trial shall not be construed to pose a danger of creating unfair prejudice, confusing the issues, or misleading the jury. The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death. The government shall open the argument. The defendant shall be permitted to reply. The government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the government,

ADD-2

and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a preponderance of the information.

(d) Return of special findings.--The jury, or if there is no jury, the court, shall consider all the information received during the hearing. It shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist and any other aggravating factor for which notice has been provided under subsection (a) found to exist. A finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous. If no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death authorized by law.

(e) Return of a finding concerning a sentence of death.--If, in the case of—

...  (1) an offense described in section 3591(a)(1), an aggravating factor required to be considered under section 3592(b) is found to exist;

...  (2) an offense described in section 3591(a)(2), an aggravating factor required to be considered under section 3592(c) is found to exist; or

...  (3) an offense described in section 3591(b), an aggravating factor required to be considered under section 3592(d) is found to exist,

the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

(f) Special precaution to ensure against discrimination.--In a hearing held before a jury, the court, prior to the return of a finding under subsection (e), shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in

ADD-3

question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be. The jury, upon return of a finding under subsection (e), shall also return to the court a certificate, signed by each juror, that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

\*      \*      \*      \*      \*

ADD-4

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 13. DRUG ABUSE PREVENTION AND CONTROL
SUBCHAPTER I. CONTROL AND ENFORCEMENT
PART D. OFFENSES AND PENALTIES

**21 U.S.C. § 841 Prohibited acts A**

\*       \*       \*       \*       \*

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

(b) Penalties

Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving--

(i) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

ADD-5

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 1,000 or more marihuana plants regardless of weight; or

(viii) 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not

to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years and fined in accordance with the preceding sentence. Notwithstanding section 3583 of Title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

(B) In the case of a violation of subsection (a) of this section involving--

(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

(ii) 500 grams or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

ADD-7

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 100 or more marihuana plants regardless of weight; or

(viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a

fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

(C) In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in

accordance with the provisions of Title 18 or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

(D) In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

(E)(i) Except as provided in subparagraphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment

ADD-10

of not more than 15 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,500,000 if the defendant is other than an individual, or both.

(ii) If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 30 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

(iii) Any sentence imposing a term of imprisonment under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

(2) In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

(3) In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18

or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 4 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph may, if there was a prior conviction, impose a term of supervised release of not more than 1 year, in addition to such term of imprisonment.

(4) Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18.

(5) Any person who violates subsection (a) of this section by cultivating or manufacturing a controlled substance on Federal property shall be imprisoned as provided in this subsection and shall be fined any amount not to exceed—

> (A) the amount authorized in accordance with this section;

> (B) the amount authorized in accordance with the provisions of Title 18;

> (C) $500,000 if the defendant is an individual; or

> (D) $1,000,000 if the defendant is other than an individual;

> or both.

(6) Any person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land, and, by such use--

> (A) creates a serious hazard to humans, wildlife, or domestic animals,

> (B) degrades or harms the environment or natural resources, or

> (C) pollutes an aquifer, spring, stream, river, or body of water, shall be fined in accordance with Title 18 or imprisoned not more than five years, or both.

(7) Penalties for distribution

(A) In general

Whoever, with intent to commit a crime of violence, as defined in section 16 of Title 18 (including rape), against an individual, violates subsection (a) by distributing a controlled substance or controlled substance analogue to that individual without that individual's knowledge, shall be imprisoned not more than 20 years and fined in accordance with Title 18.

(B) Definition

For purposes of this paragraph, the term "without that individual's knowledge" means that the individual is unaware that a substance with the ability to alter that individual's ability to appraise conduct or to decline participation in or communicate unwillingness to participate in conduct is administered to the individual.

(c) Offenses involving listed chemicals

Any person who knowingly or intentionally--

(1) possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

(2) possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter; or

(3) with the intent of causing the evasion of the recordkeeping or reporting requirements of section 830 of this title, or the regulations issued under that section, receives or distributes a reportable amount of any listed chemical in units small enough so that the making of records or filing of reports under that section is not required;

shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not

more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical, or both.

(d) Boobytraps on Federal property; penalties; "boobytrap" defined

(1) Any person who assembles, maintains, places, or causes to be placed a boobytrap on Federal property where a controlled substance is being manufactured, distributed, or dispensed shall be sentenced to a term of imprisonment for not more than 10 years or fined under Title 18, or both.

(2) If any person commits such a violation after 1 or more prior convictions for an offense punishable under this subsection, such person shall be sentenced to a term of imprisonment of not more than 20 years or fined under Title 18, or both.

(3) For the purposes of this subsection, the term "boobytrap" means any concealed or camouflaged device designed to cause bodily injury when triggered by any action of any unsuspecting person making contact with the device. Such term includes guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes, and lines or wires with hooks attached.

(e) Ten-year injunction as additional penalty

In addition to any other applicable penalty, any person convicted of a felony violation of this section relating to the receipt, distribution, manufacture, exportation, or importation of a listed chemical may be enjoined from engaging in any transaction involving a listed chemical for not more than ten years.

(f) Wrongful distribution or possession of listed chemicals

(1) Whoever knowingly distributes a listed chemical in violation of this subchapter (other than in violation of a recordkeeping or reporting requirement of section 830 of this title) shall, except to the extent that paragraph (12), (13), or (14) of section 842(a) of this title applies, be fined under Title 18 or imprisoned not more than 5 years, or both.

(2) Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have not been adhered to, if, after such knowledge is acquired, such person does not take immediate steps to

remedy the violation shall be fined under Title 18 or imprisoned not more than one year, or both.

(g) Internet sales of date rape drugs

(1) Whoever knowingly uses the Internet to distribute a date rape drug to any person, knowing or with reasonable cause to believe that--

(A) the drug would be used in the commission of criminal sexual conduct; or

(B) the person is not an authorized purchaser;

shall be fined under this subchapter or imprisoned not more than 20 years, or both.

(2) As used in this subsection:

(A) The term "date rape drug" means—

(i) gamma hydroxybutyric acid (GHB) or any controlled substance analogue of GHB, including gamma butyrolactone (GBL) or 1,4-butanediol;

(ii) ketamine;

(iii) flunitrazepam; or

(iv) any substance which the Attorney General designates, pursuant to the rulemaking procedures prescribed by section 553 of Title 5, to be used in committing rape or sexual assault.

The Attorney General is authorized to remove any substance from the list of date rape drugs pursuant to the same rulemaking authority.

(B) The term "authorized purchaser" means any of the following persons, provided such person has acquired the controlled substance in accordance with this chapter:

(i) A person with a valid prescription that is issued for a legitimate medical purpose in the usual course of professional practice that is based upon a qualifying medical relationship by a practitioner registered by the Attorney General. A "qualifying medical relationship" means a medical relationship that exists when the practitioner has conducted at least 1 medical evaluation with the authorized purchaser in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The preceding sentence shall not be construed to imply that 1 medical evaluation demonstrates that a prescription has been issued for a legitimate medical purpose within the usual course of professional practice.

(ii) Any practitioner or other registrant who is otherwise authorized by their registration to dispense, procure, purchase, manufacture, transfer, distribute, import, or export the substance under this chapter.

(iii) A person or entity providing documentation that establishes the name, address, and business of the person or entity and which provides a legitimate purpose for using any "date rape drug" for which a prescription is not required.

(3) The Attorney General is authorized to promulgate regulations for record-keeping and reporting by persons handling 1,4-butanediol in order to implement and enforce the provisions of this section. Any record or report required by such regulations shall be considered a record or report required under this chapter.

(h) Offenses involving dispensing of controlled substances by means of the Internet

(1) In general

It shall be unlawful for any person to knowingly or intentionally—

(A) deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter; or

ADD-16

(B) aid or abet (as such terms are used in section 2 of Title 18) any activity described in subparagraph (A) that is not authorized by this subchapter.

(2) Examples

Examples of activities that violate paragraph (1) include, but are not limited to, knowingly or intentionally--

(A) delivering, distributing, or dispensing a controlled substance by means of the Internet by an online pharmacy that is not validly registered with a modification authorizing such activity as required by section 823(f) of this title (unless exempt from such registration);

(B) writing a prescription for a controlled substance for the purpose of delivery, distribution, or dispensation by means of the Internet in violation of section 829(e) of this title;

(C) serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the dispensing of a controlled substance in a manner not authorized by sections 823(f) or 829(e) of this title;

(D) offering to fill a prescription for a controlled substance based solely on a consumer's completion of an online medical questionnaire; and

(E) making a material false, fictitious, or fraudulent statement or representation in a notification or declaration under subsection (d) or (e), respectively, of section 831 of this title.

(3) Inapplicability

(A) This subsection does not apply to—

(i) the delivery, distribution, or dispensation of controlled substances by nonpractitioners to the extent authorized by their registration under this subchapter;

(ii) the placement on the Internet of material that merely advocates the use of a controlled substance or includes pricing information without

attempting to propose or facilitate an actual transaction involving a controlled substance; or

(iii) except as provided in subparagraph (B), any activity that is limited to—

(I) the provision of a telecommunications service, or of an Internet access service or Internet information location tool (as those terms are defined in section 231 of Title 47); or

(II) the transmission, storage, retrieval, hosting, formatting, or translation (or any combination thereof) of a communication, without selection or alteration of the content of the communication, except that deletion of a particular communication or material made by another person in a manner consistent with section 230(c) of Title 47 shall not constitute such selection or alteration of the content of the communication.

(B) The exceptions under subclauses (I) and (II) of subparagraph (A)(iii) shall not apply to a person acting in concert with a person who violates paragraph (1).

(4) Knowing or intentional violation

Any person who knowingly or intentionally violates this subsection shall be sentenced in accordance with subsection (b).

*     *     *     *     *

UNITED STATES CODE
TITLE 21. FOOD AND DRUGS

## 21 U.S.C. § 848 (1988) (repealed 2006) Continuing criminal enterprise

\*       \*       \*       \*       \*

(a) Penalties; forfeitures

Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title; except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 30 years and which may be up to life imprisonment, to a fine not to exceed the greater of twice the amount authorized in accordance with the provisions of title 18 or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title.

(b) Life imprisonment for engaging in continuing criminal enterprise

Any person who engages in a continuing criminal enterprise shall be imprisoned for life and fined in accordance with subsection (a) of this section, if—

>   (1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and

>   (2)(A) the violation referred to in subsection (d)(1) of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title, or

>   (B) the enterprise, or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B) of this title.

(c) "Continuing criminal enterprise" defined

For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

> (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

> (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

>> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

>> (B) from which such person obtains substantial income or resources.

(d) Suspension of sentence and probation prohibited

In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and the Act of July 15, 1932 (D.C. Code, secs. 24-203-24-207), shall not apply.

(e) Death penalty

> (1) In addition to the other penalties set forth in this section-

>> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and

>> (B) any person, during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony violation of this subchapter or subchapter II of this chapter who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of any Federal, State, or local law enforcement officer engaged in, or on account of, the

performance of such officer's official duties and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

(2) As used in paragraph (1)(b), the term "law enforcement officer" means a public servant authorized by law or by a Government agency or Congress to conduct or engage in the prevention, investigation, prosecution or adjudication of an offense, and includes those engaged in corrections, probation, or parole functions.

(g) Hearing required with respect to death penalty

A person shall be subjected to the penalty of death for any offense under this section only if a hearing is held in accordance with this section.

(h) Notice by Government in death penalty cases

(1) Whenever the Government intends to seek the death penalty for an offense under this section for which one of the sentences provided is death, the attorney for the Government, a reasonable time before trial or acceptance by the court of a plea of guilty, shall sign and file with the court, and serve upon the defendant, a notice—

(A) that the Government in the event of conviction will seek the sentence of death; and

(B) setting forth the aggravating factors enumerated in subsection (n) of this section and any other aggravating factors which the Government will seek to prove as the basis for the death penalty.

(2) The court may permit the attorney for the Government to amend this notice for good cause shown.

(i) Hearing before court or jury

(1) When the attorney for the Government has filed a notice as required under subsection (h) of this section and the defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section, the judge who presided at the trial or before whom the guilty plea was entered, or any other judge if the judge who presided at the trial or before whom the guilty plea was entered is unavailable, shall conduct a separate sentencing hearing

ADD-21

to determine the punishment to be imposed. The hearing shall be conducted—

    (A) before the jury which determined the defendant's guilt;

    (B) before a jury impaneled for the purpose of the hearing if—

        (i) the defendant was convicted upon a plea of guilty;

        (ii) the defendant was convicted after a trial before the court sitting without a jury;

        (iii) the jury which determined the defendant's guilt has been discharged for good cause; or

        (iv) after initial imposition of a sentence under this section, redetermination of the sentence under this section is necessary; or

    (C) before the court alone, upon the motion of the defendant and with the approval of the Government.

(2) A jury impaneled under paragraph (1)(B) shall consist of 12 members, unless, at any time before the conclusion of the hearing, the parties stipulate with the approval of the court that it shall consist of any number less than 12.

(j) Proof of aggravating and mitigating factors

Notwithstanding rule 32(c) of the Federal Rules of Criminal Procedure, when a defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section, no presentence report shall be prepared. In the sentencing hearing, information may be presented as to matters relating to any of the aggravating or mitigating factors set forth in subsections (m) and (n) of this section, or any other mitigating factor or any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section. Where information is presented relating to any of the aggravating factors set forth in subsection (n) of this section, information may be presented relating to any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. Any other information relevant to such mitigating or aggravating factors

ADD-22

may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The Government and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors and as to appropriateness in that case of imposing a sentence of death. The Government shall open the argument. The defendant shall be permitted to reply. The Government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the Government, and is not satisfied unless established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless established by a preponderance of the evidence.

(k) Return of findings

The jury, or if there is no jury, the court, shall consider all the information received during the hearing. It shall return special findings identifying any aggravating factors set forth in subsection (n) of this section, found to exist. If one of the aggravating factors set forth in subsection (n)(1) of this section and another of the aggravating factors set forth in paragraphs (2) through (12) of subsection (n) of this section is found to exist, a special finding identifying any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section, may be returned. A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established for purposes of this subsection, regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous. If an aggravating factor set forth in subsection (n)(1) of this section is not found to exist or an aggravating factor set forth in subsection (n)(1) of this section is found to exist but no other aggravating factor set forth in subsection (n) of this section is found to exist, the court shall impose a sentence, other than death, authorized by law. If an aggravating factor set forth in subsection (n)(1) of this section and one or more of the other aggravating factors set forth in subsection (n) of this section are found to exist, the jury, or if there is no jury, the court, shall then consider whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of

death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend that a sentence of death shall be imposed rather than a sentence of life imprisonment without possibility of release or some other lesser sentence. The jury or the court, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.

(l) Imposition of sentence

Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death. Otherwise the court shall impose a sentence, other than death, authorized by law. A sentence of death shall not be carried out upon a person who is under 18 years of age at the time the crime was committed. A sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability—

> (1) cannot understand the nature of the pending proceedings, what such person was tried for, the reason for the punishment, or the nature of the punishment; or

> (2) lacks the capacity to recognize or understand facts which would make the punishment unjust or unlawful, or lacks the ability to convey such information to counsel or to the court.

(m) Mitigating factors

In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider mitigating factors, including the following:

> (1) The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

> (2) The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.

> (3) The defendant is punishable as a principal (as defined in section 2 of title 18) in the offense, which was committed by another, but the defendant's

participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.

(4) The defendant could not reasonably have foreseen that the defendant's conduct in the course of the commission of murder, or other offense resulting in death for which the defendant was convicted, would cause, or would create a grave risk of causing, death to any person.

(5) The defendant was youthful, although not under the age of 18.

(6) The defendant did not have a significant prior criminal record.

(7) The defendant committed the offense under severe mental or emotional disturbance.

(8) Another defendant or defendants, equally culpable in the crime, will not be punished by death.

(9) The victim consented to the criminal conduct that resulted in the victim's death.

(10) That other factors in the defendant's background or character mitigate against imposition of the death sentence.

(n) Aggravating factors for homicide

If the defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section, the following aggravating factors are the only aggravating factors that shall be considered, unless notice of additional aggravating factors is provided under subsection (h)(1)(B) of this section:

(1) The defendant-

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury which resulted in the death of the victim;

(C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim;

(D) intentionally engaged in conduct which—

ADD-25

(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and

(ii) resulted in the death of the victim.

(2) The defendant has been convicted of another Federal offense, or a State offense resulting in the death of a person, for which a sentence of life imprisonment or a sentence of death was authorized by statute.

(3) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person.

(4) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance.

(5) In the commission of the offense or in escaping apprehension for a violation of subsection (e) of this section, the defendant knowingly created a grave risk of death to one or more persons in addition to the victims of the offense.

(6) The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

(7) The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

(8) The defendant committed the offense after substantial planning and premeditation.

(9) The victim was particularly vulnerable due to old age, youth, or infirmity.

(10) The defendant had previously been convicted of violating this subchapter or subchapter II of this chapter for which a sentence of five or more years may be imposed or had previously been convicted of engaging in a continuing criminal enterprise.

(11) The violation of this subchapter in relation to which the conduct described in subsection (e) of this section occurred was a violation of section 845 of this title.

(12) The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.

(o) Right of defendant to justice without discrimination

(1) In any hearing held before a jury under this section, the court shall instruct the jury that in its consideration of whether the sentence of death is justified it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or the victim, and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, may be. The jury shall return to the court a certificate signed by each juror that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, may be.

(2) Not later than one year from November 18, 1988, the Comptroller General shall conduct a study of the various procedures used by the several States for determining whether or not to impose the death penalty in particular cases, and shall report to the Congress on whether or not any or all of the various procedures create a significant risk that the race of a defendant, or the race of a victim against whom a crime was committed, influence the likelihood that defendants in those States will be sentenced to death. In conducting the study required by this paragraph, the General Accounting Office shall—

(A) use ordinary methods of statistical analysis, including methods comparable to those ruled admissible by the courts in race discrimination cases under title VII of the Civil Rights Act of 1964 [42 U.S.C. 2000e et seq.];

(B) study only crimes occurring after January 1, 1976; and

ADD-27

(C) determine what, if any, other factors, including any relation between any aggravating or mitigating factors and the race of the victim or the defendant, may account for any evidence that the race of the defendant, or the race of the victim, influences the likelihood that defendants will be sentenced to death. In addition, the General Accounting Office shall examine separately and include in the report, death penalty cases involving crimes similar to those covered under this section.

(p) Sentencing in capital cases in which death penalty is not sought or imposed

If a person is convicted for an offense under subsection (e) of this section and the court does not impose the penalty of death, the court may impose a sentence of life imprisonment without the possibility of parole.

(q) Appeal in capital cases; counsel for financially unable defendants

(1) In any case in which the sentence of death is imposed under this section, the sentence of death shall be subject to review by the court of appeals upon appeal by the defendant. Notice of appeal must be filed within the time prescribed for appeal of judgment in section 2107 of title 28. An appeal under this section may be consolidated with an appeal of the judgment of conviction. Such review shall have priority over all other cases.

(2) On review of the sentence, the court of appeals shall consider the record, the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned under this section.

(3) The court shall affirm the sentence if it determines that—

(A) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(B) the information supports the special finding of the existence of every aggravating factor upon which the sentence was based, together with, or the failure to find, any mitigating factors as set forth or allowed in this section.

In all other cases the court shall remand the case for reconsideration under this section. The court of appeals shall state in writing the reasons for its disposition of the review of the sentence.

ADD-28

(4)(A) Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either—

    (i) before judgment; or

    (ii) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(B) In any post-conviction proceeding under section 2254 or 2255 of title 28 seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(5) If the appointment is made before judgment, at least one attorney so appointed must have been admitted to practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions in that court.

(6) If the appointment is made after judgment, at least one attorney so appointed must have been admitted to practice in the court of appeals for not less than five years, and must have had not less than three years experience in the handling of appeals in that court in felony cases.

(7) With respect to paragraphs (5) and (6), the court, for good cause, may appoint another attorney whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation.

(8) Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available

judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications, for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

(9) Upon a finding in ex parte proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10). Upon a finding that timely procurement of such services could not practicably await prior authorization, the court may authorize the provision of and payment for such services nunc pro tunc.

(10) Notwithstanding the rates and maximum limits generally applicable to criminal cases and any other provision of law to the contrary, the court shall fix the compensation to be paid to attorneys appointed under this subsection and the fees and expenses to be paid for investigative, expert, and other reasonably necessary services authorized under paragraph (9), at such rates or amounts as the court determines to be reasonably necessary to carry out the requirements of paragraphs (4) through (9).

(r) Refusal to participate by State and Federal correctional employees

No employee of any State department of corrections or the Federal Bureau of Prisons and no employee providing services to that department or bureau under contract shall be required, as a condition of that employment, or contractual obligation to be in attendance at or to participate in any execution carried out under this section if such participation is contrary to the moral or religious convictions of the employee. For purposes of this subsection, the term "participation in executions" includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

*     *     *     *     *

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 13. DRUG ABUSE PREVENTION AND CONTROL
SUBCHAPTER I. CONTROL AND ENFORCEMENT
PART D. OFFENSES AND PENALTIES

**21 U.S.C. § 848 Continuing criminal enterprise**

\*      \*      \*      \*      \*

(a) Penalties; forfeitures

Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title; except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 30 years and which may be up to life imprisonment, to a fine not to exceed the greater of twice the amount authorized in accordance with the provisions of Title 18 or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title.

(b) Life imprisonment for engaging in continuing criminal enterprise

Any person who engages in a continuing criminal enterprise shall be imprisoned for life and fined in accordance with subsection (a), if—

(1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and

(2)(A) the violation referred to in subsection (c)(1) involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title, or

(B) the enterprise, or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month

ADD-31

period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B) of this title.

(c) "Continuing criminal enterprise" defined

For purposes of subsection (a), a person is engaged in a continuing criminal enterprise if--

(1) he violates any provision of this subchapter or subchapter II the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

(d) Suspension of sentence and probation prohibited

In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and the Act of July 15, 1932 (D.C.Code, secs. 24-203 - 24-207), shall not apply.

(e) Death penalty

(1) In addition to the other penalties set forth in this section—

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and

(B) any person, during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony violation of this subchapter or subchapter II who

ADD-32

intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of any Federal, State, or local law enforcement officer engaged in, or on account of, the performance of such officer's official duties and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

(2) As used in paragraph (1)(B), the term "law enforcement officer" means a public servant authorized by law or by a Government agency or Congress to conduct or engage in the prevention, investigation, prosecution or adjudication of an offense, and includes those engaged in corrections, probation, or parole functions.

(g) to (p) Repealed. Pub.L. 109-177, Title II, § 221(2), Mar. 9, 2006, 120 Stat. 231

(q) Repealed. Pub.L. 109-177, Title II, §§ 221(4), 222(c), Mar. 9, 2006, 120 Stat. 231, 232

(r) Repealed. Pub.L. 109-177, Title II, § 221(3), Mar. 9, 2006, 120 Stat. 231

(s) Special provision for methamphetamine

For the purposes of subsection (b), in the case of continuing criminal enterprise involving methamphetamine or its salts, isomers, or salts of isomers, paragraph (2)(A) shall be applied by substituting "200" for "300", and paragraph (2)(B) shall be applied by substituting "$5,000,000" for "$10 million dollars".

ADD-33

**FAIR SENTENCING ACT OF 2010**
**PUBLIC LAW 111-220, 124 STAT. 2372**
**AUGUST 3, 2010**
**(21 U.S.C. § 801 note)**

## SEC. 2. COCAINE SENTENCING DISPARITY REDUCTION.

(a) CSA.—Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended—

(1) in subparagraph (A)(iii), by striking ''50 grams'' and inserting ''280 grams''; and

(2) in subparagraph (B)(iii), by striking ''5 grams'' and inserting ''28 grams''.

(b) IMPORT AND EXPORT ACT.—Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended—

(1) in paragraph (1)(C), by striking ''50 grams'' and inserting ''280 grams''; and

(2) in paragraph (2)(C), by striking ''5 grams'' and inserting ''28 grams''.

## SEC. 3. ELIMINATION OF MANDATORY MINIMUM SENTENCE FOR SIMPLE POSSESSION.

Section 404(a) of the Controlled Substances Act (21 U.S.C. 844(a)) is amended by striking the sentence beginning ''Notwithstanding the preceding sentence,''.

**FIRST STEP ACT OF 2018**
**PUBLIC LAW 115-391, 132 STAT. 5222**
**DECEMBER 21, 2018**
**(21 U.S.C. § 841 note)**

**SEC. 404. APPLICATION OF FAIR SENTENCING ACT.**

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term ''covered offense'' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

## CERTIFICATE OF SERVICE

I certify that on this 28th day of December 2020, the foregoing document

was served on all parties or their counsel of record though the CM/ECF system and

will be served electronically via email on the attorney listed below:

Richard Cooke, Esq.
U.S. Attorney's Office
Eastern District of Virginia
2100 Jamison Avenue
Alexandria, Virginia 22314
Richard.Cooke@usdoj.gov

/s/ Donald P. Salzman
Donald P. Salzman
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Corey Johnson*