**EXECUTION SCHEDULED FOR JANUARY 14, 2021**

**No. 20-15**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**UNITED STATES OF AMERICA,**

**Plaintiff – Appellee,**

**v.**

**COREY JOHNSON, A/K/A O, A/K/A CO,**

**Defendant – Appellant.**

_____

**CAPITAL CASE**

**EMERGENCY MOTION OF COREY JOHNSON FOR STAY OF
EXECUTION PENDING CONSIDERATION AND DISPOSITION OF
APPEAL**

_____

Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Appellant*

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................1

I.     MR. JOHNSON HAS A STRONG LIKELIHOOD OF PREVAILING
       ON HIS FIRST STEP ACT CLAIM...........................................................7

       A.    Mr. Johnson Is Eligible for Sentence Reconsideration Because
             His § 848 Violations Are "Covered Offenses" .....................................9

       B.    If Mr. Johnson Were Given the Resentencing Hearing to Which
             He Is Entitled, He Could Make a Strong Showing In Support of
             a Sentence of Life without Possibility of Parole, rather than
             Death.......................................................................................................12

II.    MR. JOHNSON FACES IRREPARABLE HARM ABSENT A STAY......15

III.   THE BALANCE OF EQUITIES TIPS IN FAVOR OF A STAY................16

IV.    THE PUBLIC INTEREST FAVORS A STAY ...........................................17

V.     MR. JOHNSON DID NOT DELAY IN BRINGING THIS ACTION.........18

CONCLUSION.....................................................................................................18

i

Appellant, Corey Johnson, respectfully requests a stay of his execution, set for Thursday, January 14, pending this Court's consideration of his appeal of the denial of his claim for relief under Section 404 of the First Step Act.[1]  In support of his stay request, he submits the following:

**INTRODUCTION**

Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, passed in late 2018 by a bipartisan Congress, was designed to give retroactive effect to the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, by giving federal prisoners, convicted of crimes stemming from involvement in crack distribution violations, one chance—no more, but also no less—for a new sentencing proceeding at which they can present evidence in support of a reduced sentence.[2]  The chance to revisit these penalties was deemed so important by Congress that Section 404 was made available to federal prisoners

---

[1]  Counsel advised the government of its intent to file this Motion, and the government expressed its intention to oppose the Motion.  Mr. Johnson did not file for a stay in the district court because the district court's opinion made clear that such an effort would be futile, excusing any obligation.

[2]  Section 404 was adopted largely in recognition that the enormous sentencing disparities that had existed for crimes involving crack versus crimes involving powder cocaine were unwarranted and had, in turn, created racial disparities in sentencing that could not be countenanced.  *See United States v. Wirsing*, 943 F.3d 175, 177-78 (4th Cir. 2019).  Corey Johnson is African American.

as an initial—not a successive—action, even if they had exhausted all other avenues of direct and post-conviction appeal.

Since its passage, thousands of prisoners across the country have sought relief under Section 404 and questions regarding its coverage and interpretation have come before this Court on several occasions. In analyzing applicants' claims, this Court has said they must show only that they committed a "covered offense" —a violation for which the penalties for the "statute of conviction" have been modified even slightly by the Fair Sentencing Act. This Court has emphasized that Congress gave no indication when passing the First Step Act that it "intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis," *Wirsing*, 943 F.3d at 186, nor is it necessary that the Fair Sentencing Act explicitly modified the "statute of conviction." *United States v. Woodson*, 962 F.3d 812, 816 (4th Cir. 2020). If a showing of eligibility is made, the applicant is entitled to have his or her sentence reconsidered, without qualification, and the sentencer must take into account current law and mitigating evidence developed post-conviction. 18 U.S.C. § 3553.

Mr. Johnson is a federal death row prisoner. In 1993, he was convicted of multiple offenses, including murders in the course of a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848, all stemming from crack

distribution activities; he was sentenced to death for all but one of the CCE murders.

On August 19, 2020,[3] like many others before him, Mr. Johnson sought a sentence reduction from death to life without possibility of parole, pursuant to Section 404 of the First Step Act for violations of 21 U.S.C. § 848. He brought this action after other federal courts in Virginia and elsewhere had determined that § 848 CCE crimes were "covered offenses," and some litigants were given sentencing relief.

Mr. Johnson demonstrated to the district court that his crimes were covered offenses and asked that his sentences therefore be reconsidered. Mr. Johnson requested that, consistent with federal law and capital jurisprudence, his sentence reconsideration be conducted by a jury, and he proffered evidence showing that the sentencer would have ample reason to consider a sentence less than death. *See* Memorandum in Support of Motion for Reconsideration of Sentence Hearing Pursuant to the First Step Act of 2018 (the "Motion") at APP.28-58.

In Mr. Johnson's case, the district court, contrary to its sister courts in the Western District of Virginia, held that Mr. Johnson's violations of § 848 were not "covered offenses." The court further held that, because no explicit provision was

---

[3] This was months before the Department of Justice set his execution date.

3

made for relief in capital cases, the First Step Act excluded them. The district court also announced that, even if Mr. Johnson's violations had been covered offenses, it

> refuses to overturn the will of the community. It is not the Court's role to revisit the jury's determination, especially when doing so would run contrary to the goals of the First Step Act.

The district court stated it would, therefore, not entertain any such sentence reduction. Memorandum Order (the "*Johnson* Memorandum Order" or "*Johnson* Order") at APP.443.

On November 20, 2020, days after the district court denied his motion and Mr. Johnson had filed a notice to appeal that decision to this Court, the government set an execution date for Mr. Johnson of January 14, 2021.

Mr. Johnson's case is the first to seek relief from the First Step Act for a death-sentenced prisoner for convictions under 21 U.S.C. § 848. Two other such capital cases (those of his codefendants) are also pending before this Court. But the district courts have had occasion to consider whether the Act includes § 848 offenses in the context of non-capital crimes, and contrary to the finding of the district court in Mr. Johnson's case, several held that violations of § 848 do indeed constitute "covered offenses" and have reconsidered the defendants' sentences. Thus, in seeking this relief, Mr. Johnson asks only for the same relief that has been granted others: a determination of eligibility followed by the opportunity to

persuade the appropriate sentencer that, given the evidence he could now present in mitigation of punishment, a sentence of life without possibility of parole is sufficient, and no more than necessary, to adequately punish him and protect the public.

Mr. Johnson is entitled to a stay of execution pending consideration of this claim because he can demonstrate to this Court that he has a "significant possibility of success on the merits," *Hill v. McDonough*, 547 U.S. 573, 584 (2006), that "he is likely to suffer irreparable harm in the absence of [this] preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 862, 876 (2015) (citation omitted).

Mr. Johnson is likely to succeed on the merits of his claim because: (1) others have already won on the question of eligibility that he presents (and it is a categorical determination);[4] (2) the district court erred as a matter of law when announcing it was not the court's role to overturn the 1993 jury sentencing determination, when this Court's holdings mandate the consideration of factors not available at the time the original sentence was imposed; and (3) Mr. Johnson has a

---

[4]    Mr. Johnson is aware of two cases in which § 848(e) offenses were deemed covered offenses, reduced sentences were imposed, and the government has not appealed these outcomes. *See* Order, *United States v. Peterson*, No. 94-CR-46-3H (E.D.N.C. Dec. 17, 2020) (reducing defendant's sentence from life to 384 months); Order, *United States v. Brown*, 03-CR0612 (E.D. Va. Sept. 21, 2020) (reducing defendant's sentence from 30 years to 23 years).

compelling case for sentence reduction, given the strong evidence that he is intellectually disabled; the fact that, despite the government's arguments in 1993 that he would be a "future danger," he has been a model inmate with a practically unblemished record for more than two decades; deep remorse; and other evidence that, despite the severity of his crimes, would support a sentence of life imprisonment rather than death.

Mr. Johnson, therefore, asks only that this Court stay his execution until it has time to deliberate thoughtfully, in the time-honored manner to which every litigant is entitled.

## ARGUMENT

Courts in the Fourth Circuit treat a motion to stay an execution as a request for a preliminary injunction. *See, e.g.*, *Prieto v. Clarke*, No. 15CV587, 2015 WL 5793903 (E.D. Va. Oct. 1, 2015). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip*, 576 U.S. at 876 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). As to the first of these factors, the Supreme Court has explained that a stay applicant must make "a strong showing that he is likely to succeed on the merits" and that "[t]he first two factors . . . are the most critical." *Nken v. Holder*, 556 U.S. 418,

6

434 (2009) (citation omitted).  In addition to these factors, courts consider "the

extent to which the inmate has delayed unnecessarily in bringing the claim" at

issue.  *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

Mr. Johnson is entitled to a stay under these standards.[5]

## I.     MR. JOHNSON HAS A STRONG LIKELIHOOD OF PREVAILING ON HIS FIRST STEP ACT CLAIM

Mr. Johnson has a significant likelihood of success on the merits of his First

Step Act claim.  Mr. Johnson is eligible for relief under the First Step Act because,

like others with similar claims who have prevailed,[6] he was convicted of offenses

---

[5]   The First Step Act was meant to provide applicants a discrete opportunity to have their sentences reconsidered without the procedural hurdles applicable to most post-conviction challenges.  The government has compromised that opportunity for Mr. Johnson by setting an execution date in the middle of his litigation.

[6]   *See, e.g.*, *United States v. Davis*, No. 93-CR-30025, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020) ("[A] defendant's § 848(e)(1)(A) conviction is a covered offense because it relies on the drug quantity thresholds set by § 841 and, therefore, requires a jury finding that the defendant committed a murder in furtherance of a drug conspiracy to sell 280 or more grams of cocaine base."), *appeal dismissed*, No. 20-6383 (4th Cir. Oct. 20, 2020); Order, *United States v. Fells*, 94-CR-46 (E.D.N.C. Dec. 17, 2020); *United States v. Brown*, No. 08-CR-00011-1, 2020 WL 3106320, at *4 (W.D. Va. 2020); Order at 5, *United States v. Kelly*, No. 94-CR-163 (E.D. Va. June 5, 2020) (sentencing reduction granted; government has not appealed); *Wright v. United States*, 425 F. Supp. 3d 588, 598 (E.D. Va. 2019); Order at 1, *United States v. Groves*, No. 94-CR-97 (E.D.N.C. Nov. 21, 2019); *United States v. Dean*, No. 97-276(3), 2020 WL 2526476, at *3 (D. Minn. May 18, 2020); *United States v. Jimenez*, No. 92-CR-550-01, 2020 WL 2087748, at *2 (S.D.N.Y. Apr. 30, 2020); Mem.-Dec. and Order at 4, *United States v. Hines*, No. 94-CR-150 (N.D.N.Ya. Nov. 8, 2019), ECF No. 607; Mem.-Dec. and

under 21 U.S.C. § 848, and the Fair Sentencing Act modified the penalties of 21

U.S.C. § 848, his "statute of conviction."  As a result of his eligibility, and under

this Circuit's case law, he should be able to present to a sentencer the extensive

evidence he now has, including, *inter alia*, a strong showing of  intellectual

disability[7] and a virtually unblemished prison record spanning more than two

decades, proving that he has adjusted to the strictures of prison without committing

any further violence.  *United States v. Chambers*, 956 F.3d 667, 675 (4th Cir.

2020).

Mr. Johnson's application for relief does not rest on a blank slate in this

Court.  To the contrary, this Court has laid out clear standards that fully support

both his eligibility to have his sentence reconsidered[8] and the principles that

---

Order at 4, *United States v. Walker*, No. 95-CR-101 (N.D.N.Y. Oct. 25, 2019),
ECF No. 620; Dec. and Order at 4, *United States v. Robinson*, No. 98-CR-60 (E.D.
Wis. Sept. 27, 2019), ECF No. 606.

[7]   Mr. Johnson has presented a strong case of intellectual disability, which has
never been presented to any court and which should render him ineligible for
execution, in other pleadings before this Court. That issue does not need to be
reached in this appeal or in this stay motion: if a stay is granted so that he can
proceed under the First Step Act, all of that evidence could be considered by the
sentencer in determining punishment.

[8]   *Wirsing*, 943 F.3d at 186 (Courts should look only to whether penalties were
modified for the "statute of conviction," and not engage in "complicated and
eligibility-limiting determination[s] at the 'covered offense' stage of the [First Step
Act] analysis."); *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020) (Had
Congress intended for the First Step Act not to apply in certain circumstances, "it
could have included that language," and this Court has accordingly "decline[d] to

circumscribe the exercise the sentencer's discretion in deciding whether to reduce his or her sentence. *Chambers*, 956 F.3d at 675.

### A.    Mr. Johnson Is Eligible for Sentence Reconsideration Because His § 848 Violations Are "Covered Offenses"

When a claim is brought by a defendant for First Step Act relief, the Act requires the court to engage in a two-part process. First, the court is required to determine whether the defendant has committed a "covered offense." Mr. Johnson was convicted of violations of 21 U.S.C. § 841 (Counts 32 and 33) and § 848 (Counts 2, 8, 11, 17-19, 24, and 25). Each of these violations constitutes a "covered offense" under section 404 of the First Step Act because each is a violation of a "Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act."[9]

This Court has held that eligibility turns only on whether the penalties for the "statute of conviction" under which a violation has charged have been modified

---

expand the limitations crafted by Congress."); *Woodson*, 962 F.3d at 816 (A modification to a penalty can be slight, does not have to be explicitly mentioned in section 2 or 3 of the Fair Sentencing Act, and the defendant's sentencing range does not have to change in order for him or her to have a "covered offense.").

[9]    Mr. Johnson confines his discussion hereafter to the § 848 offenses because the district court has already determined that his § 841 offenses are "covered offenses."

by the First Step Act.  *Wirsing*, 943 F.3d at 186.[10] Some of these courts, both in

this Circuit and elsewhere, have determined that the statute of conviction for any

subsection of § 848 violations is 21 U.S.C. § 848 as a whole.  *See, e.g.*, *Brown*,

2020 WL 3106320; *United States v. Moore*, No. 95-CR-509-2, 2020 WL 4748154

(N.D. Ill. Aug. 17, 2020).  These analyses are compelling because the term "statute

of conviction" has a natural meaning, because § 848 is brief and concise, and

because each provision of § 848 is dependent on the central subsection 848(c),

which defines a CCE.  The other subsections lay out penalties and additional

elements, but all revolve around a defendant's participation in a CCE.  *Brown*,

2020 WL 3106320, at *4.

These district courts have further determined, and, in some cases, the

government has conceded, that the penalties for both subsections 848(b) and

848(e), which predicate violations on underlying § 841(b)(1) violations, have been

modified by the Fair Sentencing Act.  Accordingly, § 848, the statute of

---

[10]  *See also United States v. Boulding*, 960 F.3d 774, 779 (6th Cir. 2020); *United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020) (holding that "the statute of conviction alone determines eligibility for First Step Act relief"); *United States v. Jackson*, 964 F.3d 197, 206 (3d Cir. 2020) ("[Section] 404 eligibility turns on a defendant's statute of conviction.").

10

conviction, has been modified by the Fair Sentencing Act, and defendants who violated § 848 are eligible for reconsideration of their sentences.[11]

Even if Mr. Johnson's "statute of conviction" were to be deemed subsection 848(e), as the district court below determined, that subsection was itself modified by the Fair Sentencing Act. *Davis*, 2020 WL 1131147, at *2; *accord Gravatt*, 953 F.3d at 263.

The district court was wrong to parse the statute even further by breaking subsection 848(e) into its component parts. Doing so runs contrary to the language of *Wirsing*, which concluded that Congress did not intend the eligibility determination to be complicated or eligibility-limiting. *Wirsing*, 943 F.3d at 186. Nor, contrary to the opinion of the district court, does the fact that the sentencing range of an individual defendant would not have changed as a result of the Fair Sentencing Act defeat eligibility under this first prong. *Woodson*, 962 F.3d at 816-17.

---

[11] *See, e.g.*, Order at 5, *United States v. Kelly*, No. 94-CR-163-4 (E.D. Va. June 5, 2020); *Wright*, 425 F. Supp. 3d at 598; Order at 1, *United States v. Groves*, No. 94-CR-97 (E.D.N.C. Nov. 21, 2019); *Dean*, 2020 WL 2526476, at *3; *Jimenez*, 2020 WL 2087748, at *2; Mem.-Dec. and Order at 4, *United States v. Hines*, No. 94-CR-150 (N.D.N.Y. Nov. 8, 2019), ECF No. 607; Mem.-Dec. and Order at 4, *United States v. Walker*, No. 95-CR-101 (N.D.N.Y. Oct. 25, 2019), ECF No. 620; Dec. and Order at 4, *United States v. Robinson*, No. 98-CR-60 (E.D. Wis. Sept. 27, 2019), ECF No. 606.

For each of these reasons, discussed more thoroughly in Mr. Johnson's Opening Brief dated December 28, 2020 ("Brief") (Brief at 19-44), Mr. Johnson is likely to succeed in demonstrating his entitlement to sentence reconsideration under Section 404.

**B.    If Mr. Johnson Were Given the Resentencing Hearing to Which He Is Entitled, He Could Make a Strong Showing In Support of a Sentence of Life without Possibility of Parole, rather than Death**

In order to prevail on his appeal in this Court, Mr. Johnson need only demonstrate he has committed a "covered offense," a showing that would trigger a remand for reconsideration of his sentence.[12]  Thus, in order to show a likelihood of success on the merits warranting a stay, he need not go any further.

It is nevertheless worth noting two important points:  First, the district court erred in its discussion of sentence reconsideration, even if it were determined—which it should not be—that the court, rather than a jury, should consider whether to impose a new sentence.  The district court treated the extensive evidence Mr. Johnson proffered dismissively and ticked through the sentencing factors listed in

---

[12]  Mr. Johnson has argued in his appeal as he did in the district court that, consistent with 21 U.S.C. § 848(*l*), 18 U.S.C. § 3593, and long-established principles of capital jurisprudence, he must be resentenced by a jury, not by the court.  *See, e.g., Ring v. Arizona*, 536 U.S. 584, 609 (2002); *Hurst v. Florida*, 136 S. Ct. 616, 624 (2016); *United States v. Stitt*, 552 F.3d 345, 354-55 (4th Cir. 2008). The district court erred when it rejected this argument and found that not only should no new jury be imposed, but the court itself did not have the authority to upend the decision made by Mr. Johnson's 1993 jury.

12

18 U.S.C. § 3553 mechanically at best. Then, ultimately, the district court announced that, in any event, it was not the court's "role" to re-examine the sentences that had been imposed by Mr. Johnson's 1993 jury—despite this Court's previous holdings that evidence of positive prison adjustment, post-conviction mitigation, and current law must be taken into account in a First Step Act sentence reconsideration.

Second, the evidence the district court refused to consider was substantial and was never heard by that 1993 jury. This included:

- Evidence, science, and law demonstrating that Mr. Johnson is a person with intellectual disability. This evidence includes three opinions of nationally renowned experts who specialize in identifying and diagnosing intellectual disability.

- Mr. Johnson suffered horrific abuse, neglect, and abandonment throughout his childhood.

- As is often the case with people with intellectual impairments who lack life skills—particularly those who were physically and emotionally abused as children—Mr. Johnson was a follower, not a leader, who was easily manipulated and would do anything to please others. This element of his character is critical to an understanding of his role in the crimes for which he was convicted.

- Mr. Johnson has an essentially flawless prison record, and a sentence reconsideration would not encourage future crime or endanger the public. Mr. Johnson has been incarcerated for 28 years, and during that time he has been a model federal inmate.

- Mr. Johnson's sentence is disproportionate compared to sentences imposed on his co-defendant Vernon Lance Thomas, who like Mr. Johnson has intellectual disability and was spared the death penalty despite being found guilty of four murders in furtherance of a

13

CCE, and is disproportionate compared to other similarly situated defendants.

- Mr. Johnson was only 22 at the time of his arrest. Now, Mr. Johnson is 52 years old and poses no threat to the prison population at large.

- Mr. Johnson has demonstrated sincere remorse. Even with his limited ability to express himself, he conveyed his profound regret and accepted responsibility for his crimes at his sentencing hearing.

This Court has held, contrary to the opinion of the district court, that such post-conviction evidence should be considered by the sentencer. *Chambers*, 956 F.3d at 674.[13]

In announcing that it is not the role of the courts to upend the sentencing decision of a jury issued 27 years ago, the district court erred as a matter of law. The entire point of the First Step Act is to provide reconsideration of sentences imposed before passage of the Fair Sentencing Act and a stay is necessary in order for this evidence to be considered. *Chambers*, 956 F.3d at 672, 674.

---

[13] *See also United States v. White*, No. 19-3058, 2020 WL 7702705, at *1 (D.C. Cir. Dec. 29, 2020) ("[I]t is unclear whether the court properly weighed the factors listed in 18 U.S.C. § 3553(a). And there is nothing to indicate that the District Court weighed the mitigating factors raised by Appellants."); *United States v. Martin*, No. 19-3905, 2020 WL 3251021, at *2 (6th Cir. June 16, 2020) (finding that the "district court erred in limiting what information it could consider for resentencing under the First Step Act").

14

## II.     MR. JOHNSON FACES IRREPARABLE HARM ABSENT A STAY

Mr. Johnson will suffer irreparable harm absent a stay because in the absence of immediate relief, no court, could reverse the harm caused by moving forward. *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("[I]rreparable harm is often suffered when . . . the district court cannot remedy the injury following a final determination on the merits." (alterations in original) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)). "In cases involving the death penalty when an execution date has been set, as here, it is a certainty that irreparable harm will result if the court of appeals' decision is not stayed." *Beaver v. Netherland*, 101 F.3d 977, 979 (4th Cir. 1996); *see also Oken v. Sizer*, 321 F. Supp. 2d 658, 666 (D. Md. 2004) ("[T]he irreparable harm to one seeking a stay of execution is ordinarily obvious."); *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) ("[I]n a capital case, the possibility of irreparable injury weighs heavily in the movant's favor." (citation omitted)).

Mr. Johnson's execution date has been set and is imminent. Without a stay to allow this Court to consider his arguments, Mr. Johnson will suffer irreparable harm.

## III.    THE BALANCE OF EQUITIES TIPS IN FAVOR OF A STAY

Here, Mr. Johnson is requesting a stay only long enough to have his First Step Act claim adjudicated by this Court.  Although the government normally has a "strong interest" in "proceeding with its judgment," *Nelson,* 541 U.S. at 649-50 (citation omitted), no such interest exists here, where the government itself has caused a decade-long delay in bringing Mr. Johnson's case to this point.  The government initially set an execution date for Mr. Johnson in 2006 but was unable to carry the execution out at that time because of flaws in its execution protocol.  Tasked by the courts with the job of replacing its flawed protocol, the government passed the next eight years, from 2011 to 2019, without any execution protocol at all.  Mem. Op. at 14, *In re the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. Nov. 20, 2019), ECF No. 50.  The Department of Justice then set a new execution date *after* Mr. Johnson had already initiated his First Step Act litigation.  The government thus has no basis to argue now that a delay of the several weeks it would take to complete briefing in this case and have this Court resolve Mr. Johnson's claim would infringe its interests.[14]

---

[14]  Under the briefing schedule set by this Court the government's opposition brief is due on January 19, 2021

16

## IV.    THE PUBLIC INTEREST FAVORS A STAY

The public interest favors granting a stay. Here Mr. Johnson is asking only for a matter of weeks to have this Court (and, if necessary, the Supreme Court) carefully consider the applicability and implementation of the First Step Act to his case, time that was cut short only by the unilateral setting by the government of this execution date.  The public as a whole, as exemplified by a bipartisan Congress and two Presidents, passed the First Step Act 25 years after Mr. Johnson's trial to fix serious flaws in the law under which he was charged and sentenced, and have made Section 404 broadly applicable to correct those flaws. These elected officials represent the whole of the public and have provided a mechanism designed to allow people who committed covered offenses to have their sentences reconsidered.  A chief consideration was the disparate treatment on the basis of race that prejudiced those convicted of crack cocaine offenses.  These elected officials believed this was such an important interest that they gave every person a way back into court, without an authorization requirement, even if the person had long before exhausted his or her appeals. Thus, it is plainly in the public interest that the government not be permitted to execute Mr. Johnson to deny him the opportunity the law intended to give him to ensure that his sentence was not tainted by racially driven disparate treatment.

17

## V.    MR. JOHNSON DID NOT DELAY IN BRINGING THIS ACTION

Mr. Johnson has not been dilatory in his pursuit of a remedy under the First Step Act.  In fact, Mr. Johnson filed his claim under it in August, 2020, just weeks after determinations had been made in non-capital cases that 21 U.S.C. § 848 was a covered offense, and after this Court determined that sentence reconsideration included consideration of post-conviction conduct. *Davis*, 2020 WL 1131147, at *2; *Jimenez*, 2020 WL 2087748, at *2; Order, *United States v. Kelly*, No. 94-CR-163-4 (E.D. Va. June 5, 2020).  There was no unreasonable delay.

### CONCLUSION

For all the foregoing reasons, and to prevent the irredeemable injustice that would occur were Mr. Johnson's execution to go forward before his rights can be adjudicated, he respectfully asks this Court to enter a stay pending consideration and determination of his First Step Act appeal.

Dated: January 7, 2021             Respectfully submitted,

/s/ Donald P. Salzman

Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Corey Johnson*

18

## **CERTIFICATE OF COMPLIANCE**

1.    This motion contains 4539 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. Rule 27(d)(2) and Rule 32(f).

2.    This motion complies with the font, spacing, and type size requirements set forth in Fed. R. App. P. Rule 32(a)(5).

/s/ Donald P. Salzman

## CERTIFICATE OF SERVICE

I certify that on this 7th day of January 2021, the foregoing document was served on all parties or their counsel of record though the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

/s/ Donald P. Salzman
Donald P. Salzman
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Corey Johnson*