IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-15 |
| | ) | |
| COREY JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | |

**United States' Response in Opposition
to Defendant's Motion to Stay Execution**

Over 27 years ago, Corey Johnson received seven death sentences under 21

U.S.C. § 848(e)(1)(A) for the murders of seven people—Peyton Maurice Johnson;

Louis J. Johnson, Jr.; Bobby Long; Anthony Carter; Dorothy Mae Armstrong; Curtis

Thorne; and Linwood Chiles. Johnson was also convicted for his role in the murder

of an eighth person, Torrick Brown, Jr., an offense that was ineligible for a death

sentence, and he was convicted of an assault resulting in serious bodily injury to

Martha McCoy. Johnson has had decades to litigate his case. His convictions and

sentences have been upheld by this Court on direct appeal and collateral review. *See*

*United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996); *United States v. Roane*, 378

F.3d 382 (4th Cir. 2004). Without explaining his delay—and without first seeking a

stay in the district court—Johnson now seeks to stay his execution, which is set for

January 14, 2021. Johnson's stay application comes so late that, at this point, over a

1

dozen family members of the people he killed are already planning travel to Terre Haute next week to witness the long-delayed execution of his sentence.

A stay of execution "is not available as a matter of right[,]" *Hill v. McDonough*, 547 U.S. 573, 584 (2006), and "last-minute stays" of executions "should be the extreme exception, not the norm." *Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020) (citation omitted). In fact, "the last-minute nature of an application" that "could have been brought" earlier, or "an applicant's attempt at manipulation," "may be grounds for denial of a stay." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019).[1] The Supreme Court has repeatedly "reiterated the importance of these principles[.]" *Long v. Sec.y, Dep't of Corr.*, 924 F.3d 1171, 1176 (11th Cir.), *cert. denied sub nom. Long v. Inch*, 139 S. Ct. 2635 (2019).

Nevertheless, Johnson now seeks delay through multiple last-minute filings, despite having 27 years to challenge his death sentences. Johnson was convicted in 1993 for his role in a drug organization that was responsible for numerous murders and maimings. A jury found that Johnson participated in seven murders and convicted him of, among other things, seven counts of violating § 848(e)(1)(A). The jury unanimously imposed seven death sentences. In 1996, this Court affirmed

---

[1] As an example of such unjustified delay, the Supreme Court in *Bucklew* cited its reversal of a lower court's entry of a stay of execution brought 10 days prior to an execution for a murder committed 24 years prior. *See Bucklew*, 139 S. Ct. at 1134 (citing *Dunn v. Ray*, 139 S. Ct. 661 (2019)); *see also Dunn v. Price*, 139 S. Ct. 1312 (2019) (considering last-minute nature of stay application in vacating lower court's entry of stay of execution).

Johnson's convictions on direct appeal, and in 2004 rejected his habeas claims, including his claims that he has an intellectual disability that bars his death sentence.

On November 20, 2020, the government informed Johnson that it had set his execution date for January 14, 2021. (ECF No. 78.) On December 14, 2020, Johnson filed a motion to vacate under 28 U.S.C. § 2255, arguing that the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3596(c), permitted re-litigating the issue of his mental health before his execution. (ECF No. 86.) The district court dismissed that petition as an unauthorized successive § 2255 on Saturday, January 2, 2021. (ECF No. 99.) Johnson appealed but has yet to seek to expedite his case in any way. *See United States v. Johnson*, 21-1 ECF No. 1 (4th Cir. Jan 5, 2021).[2]

Neither has Johnson sought to expedite his other appeals pending before this Court or this appeal, the subject of the instant stay application. Here, on November 20, 2020, Johnson appealed the district court's denial of his request for relief under the First Step Act. (ECF No. 77.) Over one month later, Johnson filed his opening brief with this Court. *United States v. Johnson*, 20-15, ECF No. 10 (4th Cir. Dec. 28, 2020). The next day, both parties received an email from the Court, asking what, if any, documents they intended to file prior to the January 14 execution date. The government responded, indicating that it would promptly respond to any motion to

---

[2] At 10:03 PM on January 7, 2021, Johnson also filed in this Court a motion for authorization to file a successive § 2255 based on his purported intellectual disability. *See In re Johnson*, 21-2, ECF. No. 2-1 (4th Cir. Jan 7, 2021).

expedite or to stay should the defendant file one. As far as the government is aware, defense counsel has yet to respond to the Court's email, and has thus far filed no motion to expedite a merits decision in this case.

Johnson also has a pending application for authorization to file a successive petition, challenging his 18 U.S.C. § 924(c) convictions, none of which carry death sentences. *See In re Johnson*, 20-8 ECF No. 2 (4th Cir. May 22, 2020). He continues to seek to have that application held in abeyance.

Johnson now seeks a stay from this Court—7 days before his execution—despite having not moved in the district court for a stay, even though Federal Rule of Appellate Procedure 8(2) mandates that the party seeking a stay in a court of appeals must have either first tried and failed to obtain a stay in the district court or, alternately, "show that moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(2)(A). Johnson has made no showing of impracticability, instead claiming only that "the district court's opinion made clear that such an effort would be futile, excusing any obligation." Stay Mot. at 1. Johnson cites no legal authority for that proposition, and the district court never stated that it would decline to entertain a stay application. This alone is sufficient to warrant dismissal. *See S.E.C. v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001) ("Elfindepan has plainly failed to satisfy the requirements of Rule 8, and we therefore deny its motions without prejudice."); *see also Whole Woman's Health v. Paxton*, 972 F.3d 649, 654 (5th Cir. 2020) (applicant's failure to comply with Fed. R. App. P. 8(a)(2)(A) rendered stay

4

application "patently procedurally defective"); *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930-31 (6th Cir. 2002) (seeking a stay pending appeal first in the district court is "[t]he cardinal principle of stay applications").

Even aside from that failure, and as explained below, Johnson fails to satisfy the stay standards.

### A.     Johnson's prosecution and direct appeal.

On July 20, 1992, a grand jury charged Johnson, along with six others, with numerous crimes related to his leadership role, along with Richard Tipton and James Roane, in a continuing criminal enterprise called the "New York Boyz," which trafficked large quantities of powder and crack cocaine in the Richmond, Virginia area between 1990 and 1992. Those charges included seven counts of capital murder in furtherance of a criminal enterprise, in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2 (Counts 8, 11, 17, 18, 19, 24, and 25).

Each of the murders charged under § 848(e) was carried out to advance the drug organization. Johnson shot Peyton Maurice Johnson fifteen times on January 14, 1992, because he was a rival drug dealer. Johnson later helped murder Louis J. Johnson, who was shot seven times on January 29, 1992, because he was perceived to have threatened him. Johnson shot Dorothy Mae Armstrong multiple times on February 1, 1992, because she owed $400 on a drug debt and was believed to be cooperating with police. Aiming to eliminate any witnesses to Armstrong's murder, Johnson also killed Bobby Long (shot as he tried to flee) and Anthony Carter (shot

5

while sitting in a chair), bystanders who happened to be in the wrong place at the wrong time.

Linwood Chiles suffered the same fate as Armstrong. Fearing Chiles was cooperating with police, Tipton and Johnson instructed Chiles to put his head on a steering wheel and then shot him at close range. Curtis Thorne was also killed in that attack, and two other passengers in the car, Gwen and Priscilla Greene, were critically wounded. Finally, Johnson murdered Torrick Brown over a petty grievance: he was friendly with James Roane's girlfriend. Brown was in an apartment with his sister, Martha McCoy, along with her three children when Roane, Johnson, and another codefendant arrived looking for Brown. When McCoy answered the door, the trio began shooting. McCoy jumped over a couch but was shot six times, resulting in twelve wounds.

In February 1993, a jury convicted Johnson of seven capital murders under § 848(e); conspiracy to possess cocaine base with the intent to distribute under 21 U.S.C. § 846; engaging in a continuing criminal enterprise under 21 U.S.C. § 848(a); committing violent crimes in aid of racketeering activity under 18 U.S.C. § 1959; using a firearm in relation to a crime of violence or a drug-trafficking offense under 18 U.S.C. § 924(c); and possession of cocaine base with the intent to distribute under 21 U.S.C. § 841(a)(1). Following a penalty hearing on the capital murder counts, the jury recommended that Johnson be sentenced to death for each of the seven murders for which he was convicted under § 848(e). *See Tipton*, 90 F.3d at 870. The jury also

sentenced Richard Tipton to death on three of the § 848(e)(1)(A) murders for which he had been convicted, and sentenced James Roane to death for one of the three § 848(e)(1)(A) murders for which he was convicted. *Id.*

On direct appeal, this Court affirmed the defendants' convictions and sentences, but merged the § 846 cocaine conspiracy conviction with the § 848 continuing criminal enterprise conviction. *Id.* at 891, 903.

**B.      Johnson's post-conviction litigation.**

Johnson raised numerous claims under § 2255, which the district court rejected, and this Court affirmed as to Johnson's claims. *See Roane*, 378 F.3d at 389.

**C.      Johnson's motion under § 404(b) of the First Step Act.**

Congress enacted the First Step Act in 2018. On August 19, 2020, Johnson filed a motion for a sentence modification under § 404(b) of the First Step Act, arguing that his murder convictions under § 848(e) and his cocaine distribution convictions were "covered offenses" eligible for resentencing. (ECF No. 39.) Johnson requested "that the Court [] order a capital resentencing hearing at which a new jury would determine whether to reduce his sentences," after which the court would "use its discretion to reduce those counts in light of all of the evidence, pursuant to § 3553(a)." (*Id.* at 2.) The district court denied Johnson's § 404(b) motion, holding that § 848(e) is not a "covered offense" under the First Step Act and adopting its earlier, comprehensive opinion denying relief on the same issue for one of Johnson's co-defendants. (ECF No. 75.) *See United States v. Roane*, No. 3:92-cr-

68 (DJN), 2020 WL 6370984 (E.D. Va. Oct. 29, 2020). Johnson appealed and now seeks a stay.

## Argument

To obtain a stay of execution, a defendant bears the burden of demonstrating that (1) he has a "strong" likelihood of success on the merits of his claim; (2) he "will be irreparably injured absent a stay"; (3) a stay will not "substantially injure the other parties interested in the proceeding"; and (4) "the public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotations omitted). The burdens of proof and persuasion are on the inmate seeking injunctive relief, not on the government, and the inmate must carry that burden "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A court cannot enjoin a defendant's execution "without finding that he has a significant possibility of success on the merits[.]" *Dunn v. McNabb*, 138 S. Ct. 369 (2017).[3]

When a defendant's conviction and sentence have been upheld on direct appeal and collateral review, a court must recognize the government's "strong interest in proceeding with its judgment" and must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim" on which a stay application is based. *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004); *see Bucklew*, 139 S. Ct.

---

[3] For example, the Supreme Court recently vacated a stay of execution where the court of appeals found the defendant's claims were "worthy of further exploration" and that a stay would permit more "time for consideration and deliberation." *Purkey v. United States*, 964 F.3d 603, 618 (7th Cir.), *stay vacated*, 141 S. Ct. 195 (2020).

at 1133–34 (explaining that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence" that has been upheld on direct appeal and collateral review, and "[c]ourts should police carefully against attempts to use [further] challenges as tools to interpose unjustified delay") (quotation marks omitted). Because the government has a "significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson*, 541 U.S. at 650.

### A.     Johnson has not shown a significant possibility of success on the merits.

Johnson's application fails at the first step: he has failed to demonstrate any likelihood of success on the merits, let alone a "significant possibility" of success. Johnson's § 848(e)(1)(A) convictions are not "covered offenses" under § 404(b). Johnson also offers no support for his theory that he is entitled to a new capital resentencing under the Act, and the district court has stated that it would not reduce Johnson's sentence even if he *were* eligible under the First Step Act. This Court can deny relief on that basis alone.

#### 1. Johnson's murder convictions under § 848(e) are not "covered offenses" under § 404(b) of the First Step Act.

The First Step Act provides that a sentencing court "may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at

9

the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Under the First Step Act, a "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222.

For an offense to qualify as "covered" under § 404(b), its statutory penalties must have been modified by the Fair Sentencing Act. *See United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019) ("On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act."). The statutory penalties for a violation of § 848(e), however, were not changed by the Fair Sentencing Act. The penalties under § 848(e) were and still are—both before and after the Fair Sentencing Act—20 years to life imprisonment or death. *See* § 848(e)(1)(A). Neither the Fair Sentencing Act nor the First Step Act altered this scheme. Because the plain language of the First Step does not encompass convictions under § 848(e), those offenses are not "covered offenses" under the First Step Act. Indeed, there is no reason to believe that Congress, through a statute aimed at remedying disparities between cocaine base and powder cocaine, *see United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020), intended to mitigate

the liability of murderers like Johnson, to say nothing of vacating lawfully imposed death sentences.[4]

Johnson's primary argument against that common-sense conclusion is that every crime described in the different subsections of § 848 should be lumped together for purposes of identifying "covered offenses." Stay Mot. at 9-11. But as the district court explained, that approach is foreclosed by precedent. In *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), this Court held that § 848(e) is a separate substantive offense, and not just a penalty enhancement. *Id.* at 633. In the terms of the First Step Act, Section 848(e)(1)(A)—like many other statutory subsections throughout the U.S. Code—establishes a distinct "violation," the "statutory penalties for which were" *not* "modified by section 2 or 3 of the Fair Sentencing Act of 2010." First Step Act § 404(a). And § 848(e)(1)(A) is similarly separable from its underlying "predicates," whether they be acts "in furtherance of a continuing criminal enterprise" or "offense[s] punishable under section 841(b)(1)(A)[.]" *See* § 848(e)(1)(A). In the context of a § 848(e)(1)(A) prosecution, these predicates function as elements which must be found by a jury. As such, they cannot be

---

[4] *See United States v. Guerrero*, 813 F.3d 462, 464–65 (2d Cir. 2016) ("The [Fair Sentencing] Act makes no mention of § 848(e)(1)(A)."); *see also United States v. Spearman*, No. 91-cr-50013-01 (BAF), 2020 WL 4390632, at *5 (E.D. Mich. Aug. 1, 2020); *United States v. Martinez*, No. 06-cr-987-1 (DC), 2020 WL 4226639 (S.D.N.Y. July 23, 2020); *United States v. Potts*, 389 F. Supp. 3d 352, 356 (E.D. Pa. 2019); *United States v. Valentine*, No. 06-cr-580 (JSR), 2019 WL 3242494, at *1 (S.D.N.Y. July 2, 2019).

"statutory penalties for which were modified by … the Fair Sentencing Act of 2010." First Step Act § 404(a), 132 Stat. at 5222.

Moreover, § 848(e)(1)(A) itself has three prongs, only one of which requires proof of a violation of § 841(b)(1)(A). *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013). Johnson was not convicted under that prong; instead, he was convicted of committing murder in furtherance "of a continuing criminal enterprise," § 848(e)(1)(A). *See Tipton*, 90 F.3d at 887 ("The Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances."). As the district court explained, the indictment, jury instructions, and verdict form all specify that the defendants in this case were charged and convicted under the "continuing criminal enterprise" prong of § 848(e)(1)(A). *See Roane*, 2020 WL 6370984, at *10 ("Simply put, Defendant's convictions in no way rest on the second prong — engaging in an offense punishable under § 841(b)(1)(A)."). Thus, even if the variant of § 848(e)(1)(A) which incorporates a § 841(b)(1)(A) violation were a "covered offense"—which it is not—it would have no bearing on Johnson's case.

The Second Circuit has rejected a similar attempt to obtain relief from a § 848(e) conviction under the Fair Sentencing Act, in a case in which the defendant *was* convicted under the prong of § 848(e)(1)(A) that requires proof of a violation

12

§ 841(b)(1)(A). In *Guerrero*, 813 F.3d 462, the defendant argued that the Fair Sentencing Act compelled vacatur of his § 848(e) conviction because after the Act's passage, "§ 848(e)(1)(A)'s drug trafficking element required the jury to find that the conspiracy involved at least 280 grams of crack cocaine" and "[b]ecause only a quantity of 50 grams was alleged and proved, … the Government failed to establish an element of the charged murder offense[.]" *Id*. at 465. The Second Circuit rejected this argument, explaining that the "crime" under § 848(e)(1)(A) "is complete at the time of the murder," when "the threshold quantity of crack cocaine necessary under § 841(b)(1)(A) was 50 grams or more." *Id.* The Fair Sentencing Act was "designed to increase threshold quantities of drugs necessary to trigger certain enhanced penalty schemes, to remove certain mandatory minimum sentences, and to direct the promulgation of new Sentencing Guidelines," but did *not* "extinguish any criminal liability under § 848(e)(1)(A)." *Id.* at 465–66.

Similarly, the only court of appeals to have considered the eligibility of a § 848(e)(1)(A) conviction under the First Step Act has held that it is *not* a "covered offense" under § 404(b). In *United States v. Snow*, 967 F.3d 563 (6th Cir. 2020), the defendant argued that the Fair Sentencing Act's increase of the threshold amount of crack cocaine under § 841(b)(1)(A) to 280 grams, "combined with § 848(e)(1)(A)'s requirement of an offense punishable under § 841(b)(1)(A), qualifies his § 848(e)(1)(A) conviction as a 'covered offense,' making him eligible for a First Step Act sentence reduction." *Id*. at 564. The Sixth Circuit disagreed, holding "that

13

the First Step Act's text and structure do not support extending resentencing relief to Snow's § 848(e)(1)(A) conviction." *Id*. The Court explained that normally, "applying the Fair Sentencing Act retroactively requires only a change in degree: adjusting from a previous and higher statutory sentencing range to a new and lower one." *Id*. at 565. In those cases, "it makes sense to say that the Fair Sentencing Act 'modified' the statutory penalties." *Id.* Snow's case did not fit that model; instead, under the logic of Snow's argument, he would no longer be liable for murder under § 848(e)(1)(A) at all because his "§ 848(e)(1)(A) conviction for murder while engaged in a conspiracy to distribute at least 50 grams of cocaine base" no longer satisfied the increased quantity requirements of § 841(b)(1)(A). *Id.* But that cannot be right: "The elimination of statutory penalties cannot be called a 'modification' of statutory penalties" provided by the Fair Sentencing Act, and the First Step Act "presupposes that the district court may still impose some sentence even after applying the Fair Sentencing Act retroactively; it simply does not contemplate the elimination of a sentence, as would be required here." *Id.*

This case is considerably easier than either *Guerrero* or *Snow*. Unlike those defendants, Johnson's murder convictions under § 848(e)(1)(A) required the government to prove his participation in "a continuing criminal enterprise," *not* his "engaging in an offense punishable under section 841(b)(1)(A)." § 848(e)(1)(A). As a result, Johnson's § 848(e)(1)(A) convictions are even further attenuated from any statute whose penalties were modified by the Fair Sentencing Act. And as the district

14

court explained, "neither the Fair Sentencing Act nor the First Step Act extinguished his criminal liability for his CCE conviction." *Roane*, 2020 WL 6370984, at *11. Thus, Johnson does not, and could not, argue that he could not be convicted of murder under § 848(e)(1)(A) today.

It could hardly be clearer that Johnson's murder convictions were unaffected by the Fair Sentencing and First Step Acts: those statutes did not affect Johnson's liability, his statutory penalties, nor even anything about "the instructions or evidence given to the jury in the penalty phase." *Roane*, 2020 WL 6370984, at *13. A court conducting a resentencing today "would have no new statutory penalties on which to base a reduced sentence." *Id.* As a result, the First Step Act's mandate to impose "a reduced sentence 'as if' the Fair Sentencing Act had been in effect" has "no meaning" in this context, *id.*, and Johnson's § 848(e)(1)(A) convictions cannot be covered offenses.[5]

---

[5] For similar reasons, Johnson's reliance on *United States v. Woodson*, 962 F.3d 812 (4th Cir. 2020), is misplaced. Stay Mot. at 2, 9. *Woodson* held that 21 U.S.C. § 848(b)(1)(C) was a "covered offense" even though the Fair Sentencing Act did not amend its text. *Id.* at 816. As the district court explained, *Woodson*'s "before-and-after approach" actually supports the argument that § 848(e) is not a covered offense, because both before and after the Fair Sentencing Act, § 848(e)(1)(A)'s penalties still cover killings in furtherance of a continuing criminal enterprise and do not depend on a specific quantity of drugs. *See Roane*, 2020 WL 6370984, at *15.

15

### 2. Johnson fails to establish his entitlement to a resentencing under the First Step Act.

Johnson suggests he is entitled to a full capital resentencing under the First Step Act. Stay Mot. at 12. Johnson cites no authority for this novel proposition, and there is no evidence that the First Step Act has any bearing on capital sentences. *See Roane*, 2020 WL 6370984, at *12 (discussing Congress's intent in passing the First Step Act). Indeed, it is unclear what procedure, exactly, Johnson contemplates occurring on remand under the First Step Act. Below, Johnson argued that the court should "order a capital resentencing hearing at which a new jury would determine whether to reduce his sentences pursuant to § 404(b) of the First Step Act[.]" (ECF No. 39 at 2.) Johnson then argued that after this capital resentencing, the court should "use its discretion to reduce those counts in light of all of the evidence, pursuant to § 3553(a)." *Id.*; *see also* Stay Mot. at 12 n.12  (arguing both that "he must be resentenced by a jury," and that the district court erred in concluding that it lacked "authority to upend the decision made by Mr. Johnson's [prior] jury").

This confusion is unsurprising, because the First Step Act does not permit courts to disturb jury-imposed death sentences under § 848(e)(1)(A) and therefore provides no procedures to govern such a proceeding. *See, e.g.*, *Roane*, 2020 WL 6370984, at *14. The First Step Act's text and animating purpose, *Gravatt*, 953 F.3d at 260, show that it was not intended to override § 848(e)'s more specific provisions

16

governing death sentences.[6] Johnson's novel argument for a resentencing on all seven § 848(e) counts should be rejected.

### 3. Even if this Court concluded that § 848(e)(1)(A) is a "covered offense," Johnson would still not merit relief.

Even if this Court concludes that § 848(e)(1)(A) is a covered offense under the First Step Act, Johnson would still not be entitled to the relief he seeks. Sentence reductions under § 404(b) are purely discretionary. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Under the First Step Act, a district court is "not obligated to reduce [the defendant's] sentence at all." *United States v. Jackson*, 952 F.3d 492, 502 (4th Cir. 2020). This Court has also recognized that relief may be denied to "defendants who almost certainly would not have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act." *Wirsing*, 943 F.3d at 179. And, even when a defendant has a covered offense, a court may consider the drug quantities involved in the offense "in evaluating [the defendant's] motion on the merits." *Gravatt*, 953 F.3d at 264.

---

[6] Johnson was convicted prior to the enactment of the FDPA. His sentence is controlled by the repealed procedures in 21 U.S.C. § 848. *See United States v. Stitt*, 552 F.3d 345, 353 (4th Cir. 2008); *see also Tipton*, 90 F.3d at 902; *Roane*, 2020 WL 6370984, at *16 n.8. In declining to find § 848(e) a "covered offense," the district court also held that the Savings Statute, 1 U.S.C. § 109, rendered the penalties for Johnson's § 848(e) convictions unchanged. *Roane*, 2020 WL 6370984, at *13-14.

Here, Johnson would have been subject to the same exact liability and penalty scheme had he been prosecuted after the Fair Sentencing Act. *Cf. Wirsing*, 943 F.3d at 179. Indeed, the drug quantities in this case far exceed the new 280-gram threshold imposed by the Fair Sentencing Act. For Johnson in particular, the PSR attributed him with 18.49 kilograms of crack. *See* PSR ¶ 55; *see also id.* at 37.

The district court explained that the 18 U.S.C. § 3553(a) factors do not support reducing Johnson's sentences even for the drug-trafficking convictions that *are* covered offenses under the First Step Act:

> Defendant murdered multiple people on different occasions in cold blood in furtherance of his drug trafficking. Defendant maimed several others in the commission of those murders. Defendant did not limit his violence to other engaged in drug trafficking—innocent bystanders fell victim to Defendant simply as a result of finding themselves in the wrong place at the wrong time.

ECF No. 75 at 11. The district court "refuse[d] to overturn the will of the community" reflected in the jury's "unanimous[] deci[sion] that this heinous serial killer" deserved the death penalty. *Id.* at 11-14. "[I]t would make no sense to set aside [a] reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) (citation omitted).

## B.     Equitable Considerations Weigh Against a Stay

The balance of the equities also weigh strongly against Johnson's request for

a stay.

In assessing the public interest and the potential harms of staying an execution, a court must take into account "the State's strong interest in enforcing its criminal judgments without undue interference" from courts—particularly where a capital defendant has exhausted the usual avenues for review of his death sentence and brings a claim shortly before that sentence is due to be carried out. *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019) (quoting *Hill*, 547 U.S. at 584); *see also Bucklew*, 139 S. Ct. at 1133–34. Once, as here, post-conviction proceedings "have run their course," "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Consequently, delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike." *Id.* (citation omitted).

The Supreme Court has also stressed the need to be wary of dilatory tactics and to guard against "abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process." *Gomez v. United States Dist. Ct.* 503 U.S. 653, 654 (1992). So too has this Court. *See, e.g.*, *Stockton v. Angelone*, 70 F.3d 12, 13 (4th Cir. 1995) ("Last minute stays [of execution] on the part of federal courts represent an interference with the orderly processes of justice which should be avoided in all but the most extraordinary circumstances."); *see also Jones v. Murray*, 976 F.2d 169, 171 (4th Cir. 1992) (citing "yet another example of a petitioner who has waited until the eve of his execution to ... [seek relief] without a justifiable

19

excuse for the delay"); *Peterson v. Murray*, 949 F.2d 704, 705 (4th Cir. 1991) (similar). Johnson has failed to move with appropriate dispatch at almost every stage of his litigation. This fact weighs against granting a stay. *See Nelson*, 541 U.S. at 649–50.

The public and the victims' families have an overwhelming interest in implementing the capital sentence imposed by a unanimous jury over a quarter-century ago. Johnson is a "serial killer" who "murdered multiple people on different occasions in cold blood" and "maimed several others," and whose victims included "innocent bystanders." (ECF No. 75 at 11-12) Thus far, no court has found any of Johnson's many attempts to challenge his convictions and sentences to warrant relief. Johnson's latest challenge is similarly meritless. The record and timeline in this case make clear that Johnson's tactics "are designed to delay [a] lawful execution[] indefinitely." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 129 (D.C. Cir. 2020) (Katsas, J., concurring). This Court "should not assist in that undertaking." *Id.*

## Conclusion

For the reasons stated above, this Court should deny Johnson a stay of execution.

Date: January 8, 2021                    Respectfully submitted,

                                         G. Zachary Terwilliger
                                         United States Attorney


                              By:  _____/s/_____

                                   Richard D. Cooke
                                   Joseph Attias
                                   Assistant United States Attorneys
                                   919 East Main Street, Suite 1900
                                   Richmond, Virginia 23219
                                   (804) 819-5400

21

## Certificate of Service and Compliance

I certify that this motion does not exceed 5,200 words (and is in fact 5,195 words) and complies with the requirements of Fed. R. App. P. 27. I also certify that on January 8, 2021, I filed electronically the foregoing with the Clerk of the Court using the CM/ECF system and will serve the defendant's counsel in the district court via email.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____ /s/ _____

Joseph Attias
Assistant United States Attorney

22