**EXECUTION SCHEDULED FOR JANUARY 14, 2021**

No. 20-15

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff – Appellee,**

**v.**

**COREY JOHNSON, A/K/A O, A/K/A CO,**

**Defendant – Appellant.**

_____

**CAPITAL CASE**

**REPLY TO UNITED STATES' OPPOSITION TO MR. JOHNSON'S
MOTION TO STAY EXECUTION**

_____

Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Appellant*

**INTRODUCTION**

Congress enacted the First Step Act of 2018 in recognition of the severity of penalties imposed for offenses associated with crack cocaine and in light of the racial disparities those sentences evidenced. The Act provides its own remedy independent of any other avenues of redress a prisoner might pursue. Corey Johnson sought, like many others, to avail himself of its relief. He was appropriately engaged in this litigation when the government set a date for his execution—doing so just hours after he had filed his Notice of Appeal seeking review in this Court of the denial below. It is this fact, one driven by the government, that has caused Mr. Johnson to need a stay so that he might have his claims heard.

The government nevertheless spends a good portion of its Opposition ("Opp.") blaming Mr. Johnson for the posture of this case. Mr. Johnson first responds to those accusations and then shows why his First Step Act application is likely to succeed and he is entitled to a stay of execution to litigate his claims.

## I. MR. JOHNSON'S FIRST STEP ACT CASE IS PROPERLY BEFORE THIS COURT

The government's initial argument appears to be that this Court should not issue a stay because Mr. Johnson has had other opportunities to challenge his conviction and sentence, several of which he is pursuing now. Opp. at 1-5. It is

certainly true that Mr. Johnson has sought to avail himself of all possible remedies, including the Congressionally granted relief under the First Step Act; and he has done so in a timely fashion in accordance with the law. The government's assertion provides no legal basis to deny a stay, and the government offers none.

Next, the government lambastes Mr. Johnson for not filing for a stay of the judgment in the district court pursuant to Federal Rule of Appellate Procedure 8. But Mr. Johnson does not seek to stay that judgment, which denied him relief under the First Step Act: he seeks to stay his *execution*, made necessary by the government's desire to execute him in the midst of his litigation. Opp. at 4-5. In fact, Mr. Johnson's First Step Act claim was already on appeal to this Court when he received his notice of execution. It is for this Court to decide whether unilateral action by the Appellee can moot the appeal.  And even if a motion under Rule 8 was required, it can be excused by "show[ing] that moving first in the district court would be impracticable." *S.E.C. v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001) (citation omitted).

Finally, the government blames Mr. Johnson for the amount of time he has been under sentence of death, for not moving to expedite this appeal, and for an "attempt at manipulation," presumably for seeking a stay. Opp. at 2, 3. Given that

much of the passage of time was due to the government's own inaction,[1] this is a strange accusation, but one in any event that can have little bearing here. Nor is there a reason why Mr. Johnson would seek to rush this Court through the briefing. Having initiated his case well prior to the government's announcement of his execution date, Mr. Johnson can hardly be blamed now for seeking to stay that date so that he can continue to seek relief to which he is entitled under the law.

The government set Mr. Johnson's execution months after he was already in court litigating his right to First Step Act relief. It is that action alone that has required him to seek a stay of execution. None of the government's misplaced invective can alter this. The government may not want Mr. Johnson to have the fair review that every other First Step Act applicant will obtain, but this Court should allow Mr. Johnson to seek relief under the First Step Act by granting his request for a stay.

## II. MR. JOHNSON HAS A STRONG LIKELIHOOD OF SUCCEEDING ON HIS FIRST STEP ACT CLAIM

The government contends that Mr. Johnson cannot meet this significant prong of the stay test. Its arguments are unavailing.

---

[1] *See* Reply to Opposition to Stay of Execution on Motion for Authorization.

### A. Mr. Johnson's § 848 Convictions Are Covered Offenses Under the Act

Contrary to the government's misguided (and flatly wrong) arguments that Mr. Johnson's § 848 convictions are not "covered offenses," Mr. Johnson has a "significant possibility" of succeeding on the merits based on settled law in the Fourth Circuit:

(1) district courts must evaluate only whether the penalties for the "statute of conviction" were modified to determine whether a First Step Act applicant committed a "covered offenses," *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019), and Mr. Johnson violated § 848;

(2) "there is no eligibility requirement" for relief "beyond the threshold question of whether there is a 'covered offense,'" *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020) (citing *Wirsing*, 943 F.3d at 185);[2]

(3) this "threshold question" turns on the statute of conviction itself, rather than the individualized circumstances of a particular defendant, *United*

---

[2] The Third, Sixth, and Seventh Circuits are in accord. *United States v. Jackson*, 964 F.3d 197, 206 (3d Cir. 2020) ("§ 404 eligibility turns on a defendant's statute of conviction"); *United States v. Boulding*, 960 F.3d 774, 781 (6th Cir. 2020); *United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020) (holding that "the statute of conviction alone determines eligibility for First Step Act relief").

*States v. Woodson*, 962 F.3d 812, 816 (4th Cir. 2020); *Gravatt*, 953 F.3d at 262;

(4) this threshold question should not be conflated with the district court's assessment of whether a particular defendant's sentence should be reduced, *Gravatt*, 953 F.3d at 264; *Woodson*, 962 F.3d at 817; and

(5) the determination of what constitutes the statute of conviction should be neither complicated nor eligibility-limiting, *Wirsing*, 943 F.3d at 186.

The government's contention that Mr. Johnson is not likely to succeed on the merits of demonstrating he committed a covered offense rests on the underlying and incorrect premise that § 848 is not Mr. Johnson's statute of conviction. The Western District of Virginia has already found that § 848 as a whole constitutes the statute of conviction for violations of specific provisions of § 848, *United States v. Brown*, No. 08-cr-00011-1, 2020 WL 3106320, at \*4 (W.D. Va. June 11, 2020), and the government never appealed that holding.[3]

In now arguing that § 848 is not the "statute" of conviction, the government cannot get away from the fact (and its own language) that § 848(e) is a subsection of the statute of conviction.

---

[3] The time to appeal has long since expired.

The government's reliance on this Court's 1997 opinion in *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), for the proposition that § 848(e) is a self-contained "subsection of the statute," and, therefore, is itself the stand-alone statute of conviction, is misplaced. *NJB*, decided 10 years before passage of the Fair Sentencing Act and 20 years before passage of the First Step Act, addressed an earlier version of § 848, one which included a now-repealed sentencing scheme for capital crimes, and was considering a different question.[4] The government also ignores that *NJB* held only that § 848(e) defined a separate "crime," not that it was a separate statute. Single statutes often define multiple crimes. Moreover, the penalties for violations of § 848(e) also were modified, even if § 848(e) is deemed his statute of conviction.

*United States v. Guererro*, 813 F.3d 462 (2d Cir. 2016), cited by the government, involved the application of the Fair Sentencing Act and was decided years before the First Step Act was enacted. It had nothing to do with application of the First Step Act.

Further, *United States v. Snow*, 967 F.3d 563 (6th Cir. 2020) (per curiam), is also inapposite. In contrast to Mr. Johnson, Mr. Snow challenged his §

---

[4] *NJB* considered whether the government had given a juvenile defendant adequate notice that the "offense" with which he was charged could be prosecuted against him as an adult.

6

848(e)(1)(A) conviction on the basis he could no longer be found guilty of the §

841(b)(1)(A) predicate crime based on the amount of crack that was attributed to

him in his original conviction, and that he was, therefore, only subject to penalties

under other provisions of § 848, but not the penalties required by § 848(e). But the

First Step Act does not operate to vacate convictions; it merely establishes that, for

any covered offense, a defendant is entitled to have his sentence reconsidered and

reduced. Thus, the First Step Act did not vacate Mr. Snow's conviction under §

841(b)(1)(A), and likewise, could not vacate his conviction under § 848(e).[5] The

Sixth Circuit had to reject Mr. Snow's claim because he overreached. Unlike Mr.

Snow, Mr. Johnson only seeks to be resentenced to a penalty found in § 848(e).

Finally, the government's insistence that Mr. Johnson is unlikely to succeed

on the merits due the specific details of his offense is wrong. Although this Court

has been clear that the threshold question of eligibility involves only the statute of

conviction, *Woodson*, 962 F.3d at 816, the government argues that, because Mr.

Johnson's § 848(e) violation is predicated on his participation in a CCE, rather

---

[5] The Sixth Circuit's argument in *Snow* goes too far. Taken to its (il)logical conclusion, it would mean that violations of § 841(b)(1)(A) were not covered offenses, either, because one had to be resentenced, and could only be resentenced to a penalty found in other provisions of § 84 not those found in § 841(b)(1)(A) itself.  Thus, applying the Sixth Circuit's reasoning would up end much of this Court's First Step Act jurisprudence.

than on a § 841(b)(1)(A) violation, he has not committed a "covered offense." But as Mr. Johnson has consistently explained, this Court itself concluded on direct appeal that his CCE offenses were based on a conspiracy to violate § 841(b)(1)(A) by distributing crack—in amounts that would no longer constitute violations of § 841(b)(1)(A). Thus, even using this improper analysis, Mr. Johnson's CCE offenses still rest on trafficking crack, and his sentences are subject to review. *E.g.*, *Hall v. United States*, No. 93-cr-162(1),2020 U.S. Dist. LEXIS 121742, at *11-14 (E.D. Va. Mar. 2, 2020) (where defendant was convicted of a CCE for committing a series of violations under § 841(b)(1)(A) and § 846, the CCE violation itself constituted a "covered offense").[6]

Under the Court's current case law, Mr. Johnson's "possibility of success" on the merits is "significant," *Dunn v. McNabb*, 138 S. Ct. 369 (2017), the standard the government asks this Court to apply. Opp. at 8.

---

[6] Even though the applicant had engaged in violent acts, the district court in *Hall* granted a sentencing reduction after noting it must consider the totality of the circumstances including the movant's post-conviction behavior. *Hall*, 2020 U.S. Dist. LEXIS 121742, at *21-22 (citing *United States v. Wright*, No. 95-cr-00039 (E.D. Va. Mar. 6, 2019), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Pepper v. United States*, 562 U.S. 476 (2011)).

8

**B. Mr. Johnson Will Prevail on the Merits Whether a Jury or a Judge Is Determined to Be the Appropriate Sentencer under the First Step Act**

The government claims confusion over what Mr. Johnson believes he is entitled to, despite quoting exactly what he has urged. Mr. Johnson is entitled to resentencing by a jury for his capital crimes and resentencing by the district court for his non-capital covered offenses.

Moreover, the government is wrong that the First Step Act's language requiring resentencing by a "court" demonstrates that the Act does not apply to capital defendants who must be resentenced by juries. This Court in *United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008), made clear that when a statute discusses resentencing by a "court," it does not preclude resentencing for capital defendant; rather, it requires that courts exercise their equitable authority to conduct resentencing as required by capital jurisprudence. *Id.* at 355.

Notwithstanding Mr. Johnson's arguments that he is entitled to jury resentencing on his capital counts, he need not prevail on that point to demonstrate a likelihood of success on reducing his capital sentences from death to life; he need only show that he is entitled, on reconsideration of his sentence, to have his sentencer—be it jury or judge—engage in a serious consideration of the factors applicable to his sentencing determination, applying current legal standards. He is likely to succeed on this, as well. This Court has been clear that resentencing under

9

the First Step Act must employ current standards of law and include post-conviction factors such a prison rehabilitation. *See United States v. Chambers*, 956 F.3d 667, 675 (4th Cir. 2020); *see also Hall*, 2020 U.S. Dist. LEXIS 121742, at *21-22.

The district refused to do this, explicitly adhering instead to the decision rendered by Mr. Johnson's 1993 jury. Needless to say, by its terms, the jury's sentencing decision from 27 years ago cannot have taken into consideration the goals of the First Step Act, Mr. Johnson's post-sentencing conduct as a model inmate, or the evidence and current law and science establishing his intellectual disability.

As to this last, Mr. Johnson has proffered the expert opinions of three nationally-renowned experts in intellectual disability who conducted comprehensive evaluations of him applying contemporary medical and legal standards, and determined that he meets the three-prong test for intellectual disability: significant deficits in intellectual functioning; significant deficits in adaptive skills; and a disability that began in childhood. Opening Brief at 13-15 (Dec. 28, 2020). On this basis alone, Mr. Johnson would likely succeed in providing a basis upon which a sentencer would have to reduce his sentence to life without parole.

10

### III.    MR. JOHNSON SATISFIES THE OTHER EQUITABLE FACTORS NECESSARY FOR A STAY

The Supreme Court has said that likelihood of success on the merits and irreparable harm are the two most critical of the four stay factors. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The government cannot plausibly argue Mr. Johnson would not suffer irreparable harm if executed, so instead addresses the public interest in arguing against a stay. Opp. at 19-20.

But, even here, the government comes up short. It urges this Court to consider its "strong interest in enforcing its judgment" once "post-conviction proceedings" "have run their course," Opp. at 19 (citations omitted), ignoring once again that the First Step Act litigation has *not* run its course—the execution date will prevent that absent a stay. Moreover, this First Step Act litigation falls outside of "usual" post-conviction channels as Congress explicitly intended—it wanted these claims to have an independent avenue for review. Mr. Johnson has been pursuing that review according to the provisions of the statute. The government's decision to "enforce its judgment" while Mr. Johnson was pursuing relief granted by Congress, is not an equity in the government's favor.

The government ends with the interest the victims of Mr. Johnson's crimes have in the outcome of the case and a warning that "delay tactics" may frustrate that interest. Opp. at 20. But the public is also interested in the fair implementation

11

of the law, and Mr. Johnson filed his First Step Act motion well in advance of this execution date. If he is executed before this claim is fully heard, and this Court or the Supreme Court subsequently finds that § 848 offenses are covered and that prisoners in Mr. Johnson's position—including his two codefendants, who have raised these same claims but do not have execution dates impeding review—are entitled to relief, the public interest will most certainly not have been served. Nor is it served for a court to allow the government to put a stop to serious, appropriate litigation by setting an execution date in the middle of it.

## CONCLUSION

Corey Johnson therefore respectfully asks this Court to stay his January 14, 2021, execution until such time as his First Step Act appeal has been decided.

Dated: January 11, 2021                   Respectfully submitted,


/s/ Donald P. Salzman
Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Corey Johnson*

## **CERTIFICATE OF COMPLIANCE**

1.      This brief contains 2669 words, excluding the parts of the brief exempted

from the word count by Fed. R. App. P. 27(d)(2), 32(f).  Mr. Johnson will file

herewith a motion to exceed the word count limit.  The government does not

oppose this motion to exceed.

2.      This brief complies with the font, spacing, and type size requirements set

forth in Fed. R. App. P. 32(a)(5).

/s/ Donald P. Salzman

## CERTIFICATE OF SERVICE

I certify that on this 11th day of January 2021, the foregoing document was served on all parties or their counsel of record though the CM/ECF system and will be served electronically via email on the attorney listed below:

> Richard Cooke, Esq.
> U.S. Attorney's Office
> Eastern District of Virginia
> 2100 Jamison Avenue
> Alexandria, Virginia 22314
> Richard.Cooke@usdoj.gov

Dated: January 11, 2021        /s/ Donald P. Salzman

Donald P. Salzman
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Corey Johnson*

14