FILED: January 12, 2021

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-15
(3:92-cr-00068-DJN-2)
_____

UNITED STATES OF AMERICA

      Plaintiff - Appellee

v.

COREY JOHNSON, a/k/a O, a/k/a CO

      Defendant - Appellant

_____

No. 21-1
(3:92-cr-00068-DJN-2)
(3:20-cv-00957-DJN)
_____

UNITED STATES OF AMERICA

      Plaintiff - Appellee

v.

COREY JOHNSON, a/k/a O, a/k/a CO

      Defendant - Appellant

------------------------------

THE CONSTITUTION PROJECT AT THE PROJECT ON GOVERNMENT
OVERSIGHT

Amicus Supporting Appellant

_____

No. 21-2
(3:92-cr-00068-DJN-2)
_____

In re: COREY JOHNSON, a/k/a O, a/k/a CO

     Movant

_____

O R D E R
_____

Upon consideration of submissions relative to the motions for stay of execution filed in Case No. 20-15, *United States v. Corey Johnson*, Case No. 21-1, *United States v. Corey Johnson*, and Case No. 21-2, *In re: Corey Johnson*, the court denies the motions for stay of execution.

In No. 20-15, Judge Wilkinson and Judge Floyd voted to deny the motion for stay, and Judge Motz voted to grant the motion.

In Nos. 21-1 and 21-2, Judge Wilkinson, Judge Motz, and Judge Floyd all voted to deny the motions for stay of execution.

Judge Wilkinson wrote a separate opinion. Judge Motz wrote a separate opinion, concurring in the denial of the motions in No. 21-1 and No. 21-2 and dissenting from the denial of the motion in No. 20-15.

For the Court

/s/ Patricia S. Connor, Clerk

2

WILKINSON, Circuit Judge:

I vote to deny a stay of execution and to deny all the subsidiary motions directed toward that singular end. The Supreme Court has warned against this flurry of last-minute motions designed to achieve a stay by virtue of allowing the courts severely limited consideration time. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019) (instructing courts to "police carefully against attempts to use [] challenges as tools to interpose unjustified delay" and explaining that stay requests can be denied if they are filed at the last minute). "Last-minute stays . . . should be the extreme exception, not the norm." *Barr. v. Lee*, 140 S. Ct. 2590, 2591 (2020) (internal quotation marks omitted). Here, Johnson had ample time to raise the issues that are only now advanced before us, giving us (and the Supreme Court) just a few days before the scheduled execution date. The very numerosity of filings, both statutory and constitutional, betrays a manipulative intention to circumvent not only the strictures of AEDPA but the Supreme Court's warnings against procedural gamesmanship designed to bring the wheels of justice to a halt. We should not reward such dilatory tactics.

It is disheartening to say the least to watch the Supreme Court's warnings disregarded. "Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Yet these interests have been ignored while Johnson's case has dragged on through the federal system for decades. Now Johnson seeks more delay, assaulting us with a barrage of last-minute claims, focusing primarily on the contention that he is intellectually disabled and

3

cannot be executed under *Atkins v. Virginia*, 536 U.S. 304 (2002), or the Federal Death Penalty Act of 1994, 18 U.S.C. § 3596(c).

There has been no dearth of process here, and we squarely rejected his contention that he is intellectually disabled under *Atkins*. In 1993, a jury convicted Johnson of twenty-seven counts, including seven murders. At sentencing, the defense retained an eminently qualified University of Virginia psychologist, who gave a lengthy presentation to the jury showing that Johnson had experienced a difficult childhood and suffered from a learning disability, though he had to concede that Johnson was not intellectually disabled. Unpersuaded, the jury recommended seven death sentences. After a failed direct appeal, Johnson brought his first habeas petition in 1998, arguing *inter alia* that he could not be executed because he was intellectually disabled. The district court denied the petition and we affirmed, holding that he was not intellectually disabled and specifically rejecting his argument that he could not be executed under *Atkins*, the case Johnson now rests his hopes upon. *United States v. Roane*, 378 F.3d 382, 408-09 (4th Cir. 2004).

Since then, there have been seven more habeas petitions, accompanied by endless motions, district court decisions, rejected appeals, and denied certiorari petitions. Johnson has raised dozens of other claims that many different judges have rejected as meritless. The courts have given exhaustive attention to petitioner's case, and at some point allowing these proceedings to travel further along this indefinite and interminable road brings the rule of law into disrepute.

I should say finally that there is not the slightest question of innocence here. Johnson has committed multiple murders of a horrific nature, and even in the depressing annals of

4

capital crimes, his case stands out. As Judge Novak recounted below, Johnson is a brutal "serial killer" who was involved in at least ten murders as an enforcer for a large-scale narcotics operation. *United States v. Johnson*, No. 3:92cr68, 2021 WL 17809, at *1-2 (E.D. Va. Jan. 2, 2021). The time has long since passed for the judgment of the jury and that of so many courts thereafter to be carried out.

DIANA GRIBBON MOTZ, Circuit Judge, concurring in No. 21-1 and No. 21-2, dissenting in No. 20-15:

I.

I vote to deny the motions to stay execution in cases No. 21-1 and No. 21-2. I believe the motion in No. 21-2 is untimely. However, the claim asserted by Petitioner Johnson in No. 21-1 is both timely and raises grave concerns about the propriety of now executing him. I write separately to explain why I believe binding precedent nonetheless requires denial of that motion.

Since Johnson first contested his sentence on intellectual disability grounds, medical standards have evolved, "[r]eflecting improved understanding . . . of how mental disorders are expressed and can be recognized by trained clinicians." *Moore v. Texas*, 137 S. Ct. 1039, 1053 (2017). In light of these advances, courts now routinely recalibrate decades-old IQ test scores, recognizing the "statistically-proven phenomenon" that such test scores are artificially inflated. *Thomas v. Allen*, 607 F.3d 749, 757 (11th Cir. 2010); *see also Walker v. True*, 399 F.3d 315, 322–23 (4th Cir. 2005). Additionally, Johnson has, in the intervening years, uncovered contemporaneous records from his adolescence that, at the very least, raise significant questions about his intellectual functioning. No federal court has ever assessed this evidence or considered whether it forecloses a lawful imposition of the death penalty in Johnson's case.

The death penalty is "unusual in its pain, in its finality, and in its enormity," long understood to exist "in a class by itself." *Furman v. Georgia*, 408 U.S. 238, 287, 289 (1972) (Brennan, J., concurring). Indeed, whenever "a defendant's life is at stake," courts are "particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). Congress created one such safeguard in 18 U.S.C. § 3596(c), which provides that "a sentence of death shall not be carried out upon a person who is mentally retarded." As Justice Sotomayor recently observed, the "text and structure" of this provision "lend significant support" to the view that the Government may not lawfully "'carr[y] out' a death sentence" when a prisoner "is" "intellectually disabled under current diagnostic standards." *Bourgeois v. Watson*, 141 S. Ct. 507, 509 (2020) (Sotomayor, J., dissenting) (quoting 18 U.S.C. § 3596(c)). The majority of the Court, however, refused to endorse this conclusion.

To obtain a stay of execution, Johnson must demonstrate "that he has a significant possibility of success on the merits." *Dunn v. McNabb*, 138 S. Ct. 369 (2017). Given recent Supreme Court precedent, I cannot conclude that Johnson has met this burden. Accordingly, I must vote to deny the motion in No. 21-1.

## II.

I vote to grant a stay of execution in No. 20-15 because Petitioner Johnson presents a timely and serious challenge under the First Step Act that should be resolved prior to his execution. Thus, I dissent from the court's order denying a stay of execution in No. 20-15.

In my view, Johnson cannot be faulted for delay in bringing this motion because the claim has only been available to him for a brief time. Of course, we must follow the Supreme Court's instruction that courts "apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). But this is not a case where the "claim could have been brought more than a decade ago." *Gomez v. U.S. Dist. Court*, 503 U.S. 653, 654 (1992). The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, has been in effect only since December 21, 2018. And Johnson brought this claim in the district court months before his execution date was set, so it can hardly be described as "designed to achieve a stay." Concurrence at 1. The reason this matter is before us on the eve of Johnson's execution stems from the fact of the Government's chosen scheduling, not any "dilatory tactics" attributable to Johnson. *Id.*

On the merits, I am persuaded that Johnson's claim that his conviction under 21 U.S.C. § 848(e)(1)(A) is a covered offense under the First Step Act presents a novel question that is deserving of further consideration. In determining what is a covered offense, we look to the "statute of conviction." *United States v. Woodson*, 962 F.3d 812, 816 (4th Cir. 2020). Johnson presents compelling arguments that his statute of conviction is 21 U.S.C. § 848 — a cohesive statute centered on the definition of "continuing criminal enterprise" in § 848(c) — for which the penalties of various subsections have indisputably been modified. Alternatively, Johnson argues that, even viewing his statute of conviction

as § 848(e), Congress modified penalties for offenses embedded within that subsection, *i.e.* § 841(b)(1)(A). I believe these claims present difficult and important issues necessitating adequate consideration by this court. Indeed, we recently calendared a case for oral argument presenting these very questions. *See* No. 20-6505, *United States v. Jenkins*.

Accordingly, I vote to grant a stay of Johnson's execution in No. 20-15 while this serious and potentially meritorious claim remains unresolved.